In re FORMTECH INDUSTRIES, LLC, and FormTech Industries Holdings, LLC, Debtors.

HHI FormTech, LLC, Plaintiff,

v.

Magna Powertrain USA, Inc. and Magna Powertrain, Inc., Defendants.

Bankruptcy No. 09–12964 (MFW).
Adversary No. 10–50186 (MFW).

United States Bankruptcy Court, D. Delaware.

Nov. 17, 2010.

Lynn M. Brimer, Esquire, Meredith E. Taunt, Esquire, Strobl & Sharp, P.C., Bloomfield Hills, MI, Steven M. Yoder, Esquire, Jeremy W. Ryan, Esquire, Etta R. Wolfe, Esquire, Kristi S. Schubert, Esquire, Potter Anderson & Corroon LLP, Wilmington, DE, for Debtors.

Norman L. Pernick, Esquire, Karen McKinley, Esquire, Cole, Schotz, Meisel, Forman & Leonard, P.A., Wilmington, DE, Mark K. Thomas, Esquire, Jeremy T. Stillings, Esquire, Proskauer Rose LLP, Chicago, IL, for Plaintiff.

Richard M. Apkarian Jr., Esquire, Brian M. Akkashian, Esquire, Kristi A. Katsma, Dikinson Wright PLLC, Detroit, MI, Matthew P. Ward, Esquire, Womble Carlyle Sandridge & Rice PLLC, Wilmington, DE, for Defendants.

**MEMORANDUM OPINION**[1]

MARY F. WALRATH, Bankruptcy Judge.

Before the Court are the parties' cross motions for summary judgment. The Plaintiff, HHI FormTech, LLC ("HHI"), moves for summary judgment on its Complaint, seeking a declaration that it acquired accounts receivable due from Magna free and clear of setoff or recoupment for damages arising from the Debtors' rejection of Magna's contracts. The Defendants, Magna Powertrain USA, Inc. and Magna Powertrain, Inc. (collectively, "Magna"), move for summary judgment dismissing the Complaint for lack of subject matter jurisdiction. For the reasons set forth below, the Court will deny Magna's Motion and grant HHI's Motion.

## I. BACKGROUND

Magna is in the business of automobile manufacturing. Since the 1980's, FormTech Industries, LLC ("FormTech") sold Magna a variety of machined automobile forgings for main shafts and gears. This supply of parts was documented in a series of "Purchase Orders" that Magna periodically issued to FormTech. The Purchase Orders did not commit Magna to purchase any particular quantity of parts, but rather listed only Magna's part numbers and the then-applicable price for each part. The Purchase Orders furthermore created (pursuant to Magna's Terms and Conditions) an "irrevocable option" under which Magna could place individual orders for automotive parts.

When Magna actually wished to order a specific number of parts, Magna would issue to FormTech a "Release" consistent with the price terms of its Purchase Orders. Each Release would typically (1)

---

1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

identify orders for the subsequent two to eight weeks' purchases, depending on the type of part, and (2) contain estimated quantities for additional weeks, which FormTech would use to forecast and plan its production. After receiving each Release, FormTech shipped to Magna the quantity of parts listed in the Release for that week and issued to Magna an invoice for payment of the goods actually shipped at the pricing in the current Purchase Order.

In late 2008 when it encountered financial distress, FormTech notified its customers, including Magna, that it planned to undergo a major restructuring plan. Magna agreed to an amended supply agreement, which included increased prices on some of the parts FormTech sold. In return, FormTech agreed, among other things, to continue to deliver parts, build an inventory bank of parts, provide access to its financial information, and use its best efforts to provide fifteen days advance notice of any intent to file for bankruptcy.

On August 26, 2009, FormTech and its related entity, FormTech Holdings, LLC (collectively, the "Debtors"), filed petitions for relief under chapter 11 of the Bankruptcy Code. That same day, the Debtors entered into an agreement with HHI, whereby HHI agreed to purchase substantially all of the assets of the Debtors. This purchase agreement was later revised in an amended and restated purchase agreement dated September 30, 2009 (the "APA"). On October 1, 2009, the Court entered an order approving the sale of assets to HHI (the "Sale Order"), and the sale closed on October 2, 2009. From May 2009 to the closing of the asset sale on October 2, 2009, FormTech continued to deliver goods to Magna and complied with its obligations under the amended supply agreement.

On the same day as the sale closing, October 2, 2009, the Debtors filed notices of rejection of contracts with the Court, which included any executory contracts and bailment agreements with Magna. The Court granted the rejection motion on October 30, 2009.

Also on October 2, 2009, HHI sent two letters to Magna advising that HHI had acquired the accounts receivable due from Magna ("Magna Accounts Receivable") and directing Magna to pay HHI and not the Debtors. On November 12, 2009, counsel for HHI sent an additional letter to Magna's counsel stating that HHI had acquired all of the Debtors' accounts receivable. This letter further demanded payment within five days of an alleged outstanding balance of $4,640,298.17 on the Magna Accounts Receivable. Magna refused to pay and now disputes HHI's right to collect the Magna Accounts Receivable.

On February 3, 2010, HHI initiated this adversary proceeding against Magna. In the Complaint, HHI requests a declaratory judgment that (a) HHI is the owner of the Magna Accounts Receivable; (b) the Sale Order and APA, whereby HHI bought the Debtor's assets "free and clear" of any interests or claims, applies to and is binding upon Magna; and (c) Magna is not entitled to any reduction in the Magna Accounts Receivable due to any alleged damages resulting from the rejection of its contracts by the Debtors.[2]

On April 13, 2010, Magna filed a motion for partial summary judgment dismissing

**2.** To the extent that Magna seeks setoff other than for damages due to rejection of its contracts, including damages related to alleged product quality issues, HHI asserts that the Complaint does not deal with that issue and that further proceedings may be required to determine the actual amount of the Magna Accounts Receivable.

the Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). Magna argues that while the Court does have jurisdiction to determine if HHI acquired the Magna Accounts Receivable, the Court does not have jurisdiction to determine if the sale was free and clear of Magna's alleged setoff and recoupment rights.

On April 21, 2010, HHI responded to Magna's motion and filed a cross motion for partial summary judgment seeking a declaratory judgment that (1) pursuant to the Sale Order and the APA, HHI acquired the Magna Accounts Receivable, and (2) Magna may not offset against or recoup from the Magna Accounts Receivable any rejection damages. The Motions have been fully briefed and are ripe for decision.

## II. *JURISDICTION*

■ The Court has jurisdiction to determine whether it has subject matter jurisdiction over this adversary proceeding. *See, e.g., Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 376–77, 60 S.Ct. 317, 84 L.Ed. 329 (1940) (holding that a federal court has authority to determine whether it has subject matter jurisdiction over a dispute).

## III. *DISCUSSION*

### A. *Standards for Summary Judgment*

Rule 7056 of the Federal Rules of Bankruptcy Procedure incorporates Rule 56 of the Federal Rules of Civil Procedure in adversary proceedings.

In considering a motion for summary judgment under Rule 56, the court must view the inferences from the record in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Hollinger v. Wagner*

*Mining Equip. Co.*, 667 F.2d 402, 405 (3d Cir.1981). If there does not appear to be a genuine issue as to any material fact and on such facts the movant is entitled to judgment as a matter of law, then the court shall enter judgment in the movant's favor. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Carlson v. Arnot–Ogden Mem'l Hosp.*, 918 F.2d 411, 413 (3d Cir.1990).

The movant bears the burden of establishing that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 n. 10, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Integrated Water Res., Inc. v. Shaw Envtl., Inc. (In re IT Group, Inc.)*, 377 B.R. 471, 475 (Bankr.D.Del.2007). A fact is material when it could "affect the outcome of the suit." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

Once the moving party has established a prima facie case in its favor, the non-moving party must go beyond the pleadings and point to specific facts showing more than a scintilla of evidence that there is a genuine issue of fact for trial. *See, e.g., Anderson*, 477 U.S. at 252, 106 S.Ct. 2505; *Matsushita*, 475 U.S. at 585–86, 106 S.Ct. 1348; *Michaels v. New Jersey*, 222 F.3d 118, 121 (3d Cir.2000); *Robeson Indus. Corp. v. Hartford Accident & Indem. Co.*, 178 F.3d 160, 164 (3d Cir.1999). If the moving party offers only speculation and conclusory allegations in support of its motion, the burden is not met. *See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir.1999). Therefore, when the court determines that the non-moving party has presented no genuine issue of fact, summary judgment may be granted. *See Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.

## B. *Subject Matter Jurisdiction*

Both parties filed cross motions for summary judgment on the issue of whether the Court has subject matter jurisdiction to determine whether the Magna Accounts Receivable were sold to HHI and whether they are subject to any setoff and recoupment rights Magna may have. The Court will, therefore, consider them together.

■■ A bankruptcy court may exercise jurisdiction over four categories of matters: "(1) cases under title 11, (2) proceedings arising under title 11, (3) proceedings arising in a case under title 11, and (4) proceedings related to a case under title 11." *In re Marcus Hook Dev. Park, Inc.,* 943 F.2d 261, 264 (3d Cir.1991).

■ Bankruptcy court jurisdiction is divided into "core" and "non-core" proceedings. Cases under title 11, proceedings arising under title 11, and proceedings arising in a case under title 11 are core proceedings. *In re Combustion Eng'g Inc.,* 391 F.3d 190, 225–26 (3d Cir. 2004). Cases under title 11 refers merely to the bankruptcy petition itself. *See, e.g., Marcus Hook,* 943 F.2d at 264. Proceedings arising under title 11 refers to the steps within the case and to any sub-action within the case that may raise a disputed legal matter. *See, e.g., Michigan Empl. Sec. Comm. v. Wolverine Radio Co., Inc. (In re Wolverine Radio Co.),* 930 F.2d 1132, 1141 n. 14 (6th Cir.1991). Proceedings arising in a case under title 11 refer to proceedings that are not based on any right expressly created by title 11, but nevertheless would have no existence outside the bankruptcy case. *See, e.g., Torkelsen v. Maggio (In re Guild and Gallery Plus, Inc.),* 72 F.3d 1171, 1178 (3d Cir. 1996).

■ Proceedings that are merely related to a case under title 11, on the other hand, are non-core. *See, e.g., Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.),* 372 F.3d 154, 162 (3d Cir.2004). The test for "related to" jurisdiction is whether "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re Exide Techs.,* 544 F.3d 196, 205–06 (3d Cir.2008) (*citing Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984)).

■ Orders granting the sale of assets, like the Sale Order issued by the Court in this case, are core proceedings. 28 U.S.C. § 157(b)(2)(N) (identifying core proceedings as "orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate"). Enforcement and interpretation of orders issued in core proceedings are also considered core proceedings within the bankruptcy court's jurisdiction. *See e.g., Travelers Indem. Co. v. Bailey,* —— U.S. ——, 129 S.Ct. 2195, 2205, 174 L.Ed.2d 99 (2009) (holding that "the Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders."); *In re Trans World Airlines, Inc.,* 278 B.R. 42, 49 n. 16 (Bankr.D.Del.2002) ("Core proceedings under § 157(b)(2)(N) are those which arise from, concern, or have some impact on '*orders* approving the sale of property'....") (emphasis in original).

Both parties agree that the Court has jurisdiction to determine whether the Magna Accounts Receivable were sold to HHI. The parties, however, disagree on whether the Court has jurisdiction over Magna's ability to assert setoff and recoupment rights against the Magna Accounts Receivable.

Magna argues that if the Court determines that the Magna Accounts Receivable were sold to HHI, then they are no longer

property of the estate and any determination regarding recoupment and setoff would be outside the Court's jurisdiction as a non-core matter not "related to" the bankruptcy case. *DVI Fin. Servs., Inc. v. Nat'l Med. Imaging (In re DVI, Inc.)*, 305 B.R. 414, 417 (Bankr.D.Del.2004) (finding that the bankruptcy court's jurisdiction does not follow property once it leaves the estate).

According to Magna, the determination of its setoff and recoupment rights does not require interpretation or enforcement of the Sale Order and thus is a non-core proceeding. Magna asserts that the Third Circuit has already established that setoff and recoupment rights are not extinguished "interests" in sales under section 363(f), which leaves the Court with nothing in the Sale Order to interpret. *See Folger Adam Sec., Inc. v. DeMatteis/MacGregor, JV*, 209 F.3d 252, 256 (3d Cir.2000).

Magna further argues that "related to" jurisdiction is not appropriate because any reduction of the Magna Accounts Receivable due to its recoupment and setoff rights will have no conceivable effect on the administration of the estate. Magna asserts that a pool of assets to be distributed among unsecured creditors has already been established and will not be increased or decreased as a result of this action. If Magna prevails on its setoff and recoupment rights, the only effect would be to decrease Magna's claim against the estate.

HHI argues that because the Court has jurisdiction to interpret whether the Magna Accounts Receivable were sold, it should also be able to determine whether setoff and recoupment apply. *See, e.g., In re Eveleth Mines, LLC.*, 312 B.R. 634, 641–42 (Bankr.D.Minn.2004) (finding that the bankruptcy court had jurisdiction to determine whether state taxing authority's calculation of taxes on property violated order authorizing sale free and clear of claims or other interests). According to HHI, all three issues fall under interpretation and enforcement of the Sale Order and are thus within the jurisdiction of the Court. *Travelers*, 129 S.Ct. at 2205. In addition, HHI argues that through the language of the Sale Order, the Court specifically retained its ability to enforce the Sale Order's provisions and "adjudicate any disputes arising under or related to this Sale Order or the Purchase Agreement." (Sale Order at ¶ 28.)

Finally, HHI asserts that even if the Court did not retain jurisdiction in the Sale Order, it would still have "related to" jurisdiction over the setoff and recoupment claims, based on the effect any ruling would have on the administration of the estate. *See Exide*, 544 F.3d at 205–06. In addition to seeking setoff and recoupment against HHI for its rejection damages, Magna has filed proofs of claim against the Debtors for the same rejection damages. HHI asserts that any ruling on setoff and recoupment will affect Magna's general unsecured claim and, therefore, the amount of distributions to all unsecured creditors.

The Court finds that the determination of whether Magna can assert setoff and recoupment rights is a core proceeding because it requires the interpretation and enforcement of the Court's Sale Order. *Travelers*, 129 S.Ct. at 2205. While the Third Circuit in *Folger Adam* determined the legal issue of whether setoff and recoupment rights are "interests" extinguished by a sale under section 363, it did not hold that the bankruptcy court is precluded from retaining jurisdiction over their application. *See The Shaw Group, Inc. v. Bechtel Jacobs Co., LLC (In re The IT Group, Inc.)*, 350 B.R. 166, 170 (Bankr. D.Del.2006) (finding determination of whether a third party can apply setoff to

assets sold under section 363 to be a core proceeding under the bankruptcy court's retained jurisdiction to "interpret, implement, and enforce the provisions of th[e] Sale Order."); *In re Cable & Wireless USA, Inc.,* No. 03–13711, 2004 WL 504371, at *1 (Bankr.D.Del. Mar.12, 2004) (finding the determination of whether recoupment continues against a purchaser under section 363 to be a core proceeding); *Trans World Airlines,* 275 B.R. at 717 (finding the determination of whether setoff and recoupment apply to an account receivable sold under section 363 to be a core proceeding).

The determination of whether setoff and recoupment rights are extinguished by a sale does not end the Court's interpretation of its Sale Order. The Court must also determine whether setoff and recoupment rights are enforceable against the purchaser. Both require the Court to interpret the Sale Order and determine what assets were actually sold, what contracts were assumed, and what claims against the assets were extinguished. *See Folger Adam,* 209 F.3d at 261 (noting that the dispute over the right to recoupment "centered on *what* was actually purchased in the 'free and clear' sale as opposed to what purchaser liabilities resulted from the purchase.") (emphasis in original); *IT Group,* 350 B.R. at 176 (determining mutuality based on whether certain contracts were assigned to the purchaser under the sale).

Therefore, the Court concludes that it has subject matter jurisdiction to determine whether Magna may assert setoff and recoupment rights against the Magna Accounts Receivable.

## C. Joinder of Debtors

■ Magna asserts in its Response that the Debtors are a necessary party to this adversary proceeding and that, therefore, summary judgment is inappropriate without them being joined as a party. *See Shiloh v. Rouge (In re Rouge Indus.),* 326 B.R. 55, 59 (Bankr.D.Del.2005) (stating that a determination regarding the ownership of assets allegedly transferred between a buyer and seller should not be attempted without both parties to the transaction being before the court).

As HHI points out, however, *Rouge* is distinguishable from the proceeding before the Court. In *Rouge,* the court determined that the buyer, who claimed an interest in the property, needed to be joined in an adversary action brought against the debtor by a creditor, who claimed that there was not a valid assignment. 326 B.R. at 57–58. Here, the party asserting ownership over the property in dispute, HHI, is already present in the proceeding. In addition, the Debtors, the sellers of the property, have expressly stated that the Magna Accounts Receivable were sold to HHI, and Magna does not dispute this. Therefore, the validity of the assignment is not at issue. *Cf.* 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1613 (3d ed. 2005) ("[W]hen the validity of the assignment itself is at issue the assignor's joinder *may* be required.") (emphasis added). Consequently, the Court finds that the Debtors are not a necessary party to this adversary proceeding.

## D. Sale of Accounts Receivable to HHI

■ HHI's Motion for Summary Judgment seeks a determination that the Magna Accounts Receivable were sold to HHI under the APA and Sale Order free of any setoff and recoupment rights for rejection damages. Under the APA, HHI acquired all "Purchased Assets," which include

all accounts receivable and other rights to payments (including notes receivable) ("Accounts Receivable"), of Sellers, in each case to the extent related to the

Business (the "Transferred Accounts Receivable").

(*Id.* at §§ 2.01 & 2.02(a)(iv).) HHI did not purchase "Excluded Assets" which consist of

any Contract that is not an Assigned Contract (the *"Excluded Contracts "*)

. . .

all claims against Persons other than trade creditors accruing in favor of a Seller's bankruptcy estate under Section 547 of the Bankruptcy Code (each, an *"Avoiding Power Action "*) and all proceeds thereof and all claims to the extent related to or arising from an Excluded Contract or an Excluded Liability (each, an *"Excluded Action "*).

(*Id.* at §§ 2.02(a) & (b)(viii).)

Magna argues that the Magna Accounts Receivable are a "claim[ ] . . . related to or arising from an Excluded Contract" under section 2.02(b). Since none of the contracts with Magna were assigned to HHI, Magna argues that all Magna contracts and thus all Magna Accounts Receivable should be considered "claims" under the definition of Excluded Assets in section 2.02. *See IT Group,* 377 B.R. at 477–78 (finding that the sale did not transfer accounts receivable without the underlying contracts). Magna further argues that the Magna Accounts Receivable were not sold to HHI because the APA did not specifically mention the Magna Accounts Receivable or provide a list of the transferred Accounts Receivable.

HHI responds that the clear language of the APA proves that the parties intended to transfer all Accounts Receivable whether related to Assigned Contracts or Excluded Contracts. HHI asserts that the word "claims" under section 2.02(b) does not include Accounts Receivable but is explicitly defined to apply only to "Avoiding Power Actions" and "Excluded Actions." (APA at § 2.02(b)(vii).) Under established principles of contract interpretation, HHI asserts that the specific term Accounts Receivable should govern the more general term "claims" as used in section 2.02(b). *See Huen N.Y., Inc. v. Bd. of Educ. Clinton Cent. School Dist.,* 67 A.D.3d 1337, 890 N.Y.S.2d 748, 749 (N.Y.App.Div.2009) ("[I]t is a well established principle of contract interpretation that specific provisions concerning an issue are controlling over general provisions.").

The Court agrees with HHI and concludes that the Magna Accounts Receivable were sold by the Debtors to HHI. This case is distinguishable from *IT Group,* where the sale agreement explicitly provided that the only accounts receivable sold were those "related to Completed Contracts." 377 B.R. at 475. Here, the APA did not limit the Accounts Receivable being sold only to completed (or assigned) contracts but included "all accounts, accounts receivable and other rights to payments (including notes receivable). . . ." (APA at § 2.02(a)(iv).) Therefore, the Court concludes that the Debtors, through the APA, sold all Accounts Receivable to HHI, regardless of whether they were related to an Assigned or Excluded Contract.

The Court also finds that there is a distinction in the APA between Accounts Receivable in section 2.02(a)(iv) and "claims" which are excluded under section 2.02(b). If the Debtors did not intend to sell the Accounts Receivable tied to Excluded Contracts, they could have limited the APA to sell only Assigned Contracts without any reference to Accounts Receivable. Under Magna's interpretation, section 2.02(a)(iv), selling "all" Accounts Receivable, would be rendered meaningless. *See Restatement (Second) of Contracts § 203(a)* ("[A]n interpretation which gives a reasonable, lawful, and effective meaning

to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect.").

Outstanding accounts receivable are commonly sold without the underlying contract. *See, e.g., Folger Adam*, 209 F.3d at 255 (recognizing that accounts receivable had been assigned to the purchaser while the underlying contract was excluded); *MBNA Am. Bank, N.A. v. Trans World Airlines, Inc. (In re Trans World Airlines, Inc.)*, 275 B.R. 712, 716 (Bankr.D.Del.2002) (recognizing that accounts receivable were sold, despite the debtor rejecting the corresponding executory contract). The APA in this case specifically stated that the Debtors sold to HHI all Accounts Receivable, without excluding the Magna Accounts Receivable or any receivable related to an Excluded Contract. The Court, therefore, finds that the Sale Order conveyed to HHI the Magna Accounts Receivable.

### E. Sale Free and Clear of Setoff and Recoupment Rights

The Third Circuit has held that a sale "free and clear" of all "interests" under section 363 does not extinguish recoupment rights and, in some circumstances, does not extinguish setoff rights. *Folger Adam*, 209 F.3d at 263. Distinguishing between "claims" and "defenses," the Third Circuit found that "claims" were generally "interests" which could be extinguished under section 363. *Id.* at 259. The Court, however, held that "defenses" could not be extinguished as a result of a "free and clear" sale. *Id.* at 261.

Under the Third Circuit's ruling, recoupment and setoff rights are "defenses," because they have no independent value "separate and apart from a debtor's or purchaser's claim." *Id.* at 260. The Third Circuit held that a sale under section 363 does not extinguish recoupment rights.

*Id.* With regard to setoff, however, the Third Circuit held that setoff rights under section 553 that have not been exercised pre-petition are extinguished under section 363(f). *Id.* at 263.

### 1. Setoff

██ Magna argues nonetheless that it may set off its rejection damages against the Magna Accounts Receivable. According to Magna, its claim for rejection damages is classified as a pre-petition claim under sections 365(g) and 502(g) and, therefore, it is entitled to setoff.

HHI responds that the Third Circuit has ruled that a sale under section 363 extinguishes setoff rights unless they are actually exercised prior to the date of the bankruptcy proceeding. *Folger Adam*, 209 F.3d at 262–64 (holding that when a setoff is exercised pre-petition, the portion of the accounts receivable subject to the setoff never becomes a part of the estate and therefore cannot be sold by the debtor). HHI asserts that Magna's claim for rejection damages is only classified as a pre-petition claim by the Bankruptcy Code rather than actually being a pre-petition claim. According to HHI, because the actual rejection of the executory contracts occurred post-petition, it would have been impossible for Magna to exercise pre-petition any setoff rights based on that rejection.

The Court agrees with HHI's reasoning. It is true that rejection damages are considered pre-petition obligations and may normally be set off against pre-petition obligations owed by the debtor. *See, e.g., In re Communication Dynamics, Inc.*, 382 B.R. 219, 232 (Bankr.D.Del.2008) (finding that rejection damages may be a pre-petition claim subject to setoff against other pre-petition obligations of the debtor). However, under *Folger Adam*, it is not enough that the claim be a pre-petition claim, rather the pre-petition claim of set-

off must have *actually been exercised* pre-petition. 209 F.3d at 262–64. This did not occur under the facts before the Court. As a result, the Court concludes that Magna cannot assert setoff rights for rejection damages against the Magna Accounts Receivable which were sold to HHI because it never exercised those setoff rights pre-petition.

### 2. *Recoupment*

Magna also argues that it is entitled to recoup its alleged rejection damages against the Magna Accounts Receivable. The Bankruptcy Code does not contain a recoupment provision, but the right is preserved through established common law. *University Med. Ctr. v. Sullivan (In re University Med. Ctr.)*, 973 F.2d 1065, 1079 (3d Cir.1992). Unlike setoff, which allows for reductions arising from different contracts, recoupment requires that the two debts arise from the same contract. *Folger Adam*, 209 F.3d at 263. For recoupment to apply, "both debts must arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations." *University Med. Ctr.*, at 1081. Recoupment typically allows a creditor to recoup claims for overpayment, damage-in-transit, and late delivery against accounts receivable for those same goods, not against rejection damages. *See, e.g., U.S. Postal Serv. v. Dewey Freight Sys., Inc.*, 31 F.3d 620, 623–25 (8th Cir.1994) (rejecting a recoupment claim that was not based on overpayment or damage in transit but based on a "failure to perform its future contractual commitments.").

Magna argues that its relationship with the Debtors was governed by a global supply agreement that included the general open-ended Purchase Orders. According to Magna, the individual Releases only dictated the quantity and did not provide enough terms to constitute separate and distinct contracts. As a result, Magna asserts that the Magna Accounts Receivable and the rejection damages arose from the same general transaction, the global supply agreement.

HHI responds that the Magna Accounts Receivable arose from the series of Releases that the Debtors filled and then invoiced. *See, e.g., Advanced Plastics Corp. v. White Consol. Indus., Inc.*, 828 F.Supp. 484, 487–88 (E.D.Mich.1993) (stating that obligation to supply arose only when buyer issued a release pursuant to a blanket purchase order). HHI notes that there was no inter-dependence between the Purchase Orders and no assurance that any further Releases would be issued. According to HHI, because each Release could be viewed independently, they each constituted a discrete contract, separate from the global supply agreement and the Purchase Orders. *See, e.g., St. Francis Physician Network, Inc. v. Rush Prudential HMO, Inc. (In re St. Francis Physician Network, Inc.)*, 213 B.R. 710, 719 (Bankr.N.D.Ill.1997) (finding that the "same transaction" test requires there be such a close relationship between the two debts that one cannot be determined without reference to the other).

HHI further asserts that rejection damages, by their nature, require them to be classified as a separate transaction. *See Dewey*, 31 F.3d at 623–25 (rejecting a recoupment claim for rejection damages when the damages were based on a "failure to perform its future contractual commitments, a failure inextricably tied to its status as a Chapter 11 debtor.").

In addition to rejection damages being considered a separate transaction, HHI argues that if Magna is permitted to recoup, it would collect more than other similarly situated unsecured creditors. HHI argues that such a result would "frustrate the

basic purpose of § 365 in a Chapter 11 proceeding." *Dewey,* 31 F.3d at 625.

■ The Court finds that Magna is not entitled to recoup its rejection damages against the Magna Accounts Receivable. Because recoupment frustrates the purpose of section 365 and is an exception to the statutory priorities of claims, it is narrowly construed. *See Conoco, Inc. v. Styler (In re Peterson Distrib. Inc.),* 82 F.3d 956, 959 (10th Cir.1996); *University Med. Ctr.,* 973 F.2d at 1079–80; *Sacramento Mun. Util. Dist. v. Mirant Americas Energy Mktg. L.P. (In re Mirant Corp.),* 331 B.R. 693, 697 (N.D.Tex.2005).

The Court finds that each Release constituted a separate transaction for the sale of a specific quantity of goods and resulted in a separate invoice for payment. While the prices required reference to the Purchase Orders, the Purchase Orders did not require that any specific parts be ordered. Further, there is nothing in the Magna Accounts Receivable that determines what the alleged rejection damages should be. In fact, both the Magna Accounts Receivable and the rejection damages can be calculated independently of one another.

Recoupment only applies in situations where there is one single integrated transaction, such that it would be inequitable for one party to enjoy the benefits of the transaction without also meeting its obligations, thereby preventing a windfall to the debtor. *Herod v. Southwest Gas Corp. (In re Gasmark Ltd.),* 193 F.3d 371, 374–75 (5th Cir.1999). Under these circumstances, neither the Debtors nor HHI are receiving a windfall, because the parts for which payment is being sought have already been delivered. *See Mirant,* 331 B.R. at 696–97 (disallowing recoupment claim where the creditor sought to offset payment for the gas already delivered by the debtor against the breach of contract

damages arising from the debtor's rejection of the contract).

In this proceeding, the alleged claim to be recouped is not the typical claim for overpayment, damage-in-transit, and late delivery, but rather for damages as a result of rejection of the contract. Magna's recoupment claim does not relate to the Debtor's performance or to the actual delivered goods on which the Magna Accounts Receivable are based, but rather to breach of future obligations. Without a connection to the Magna Accounts Receivable, Magna's effort to recoup for rejection damages fails the "same transaction" test.

Therefore, the Court finds that Magna's alleged damages from rejection of its contracts cannot be recouped from the Magna Accounts Receivable.

## IV. *CONCLUSION*

For the reasons set forth above, the Court will deny Magna's Motion for Summary Judgment and grant HHI's Cross–Motion for Summary Judgment.

An appropriate order is attached.

### *ORDER*

**AND NOW,** this **17th** day of **NOVEMBER, 2010,** upon consideration of the Plaintiff's Motion for Summary Judgment and the Defendant's Cross–Motion for Summary Judgment, and for the reasons set forth in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that the Defendants' Motion for Summary Judgment is **DENIED;** and it is further

**ORDERED** that the Plaintiff's Motion for Summary Judgment is **GRANTED;** and it is further

**ORDERED** that the Magna Accounts Receivable purchased by HHI FormTech, LLC, from FormTech Industries, LLC, pursuant to the Sale Order dated October

1, 2009, were free and clear of any claims of Magna for setoff or recoupment of damages arising from the Debtors' rejection of Magna's contracts.