# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 12-6033

_____

| | | |
|---|---|---|
| In re: HovdeBray Enterprises | * | |
| | * | |
| Debtor | * | |
| | * | |
| David G. Velde, Trustee | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| Plaintiff - Appellee | * | District of Minnesota |
| | * | |
| v. | * | |
| | * | |
| Border State Bank | * | |
| | * | |
| Defendant - Appellant | * | |

_____

No. 12-6035

_____

| | | |
|---|---|---|
| In re: HovdeBray Enterprises | * | |
| | * | |
| Debtor | * | |
| | * | |
| David G. Velde, Trustee | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| Plaintiff - Appellant | * | District of Minnesota |
| | * | |
| v. | * | |
| | * | |
| Border State Bank | * | |
| | * | |
| Defendant - Appellee | * | |

Submitted: October 23, 2012
Filed: December 3, 2012

_____

Before FEDERMAN, VENTERS, and SALADINO, Bankruptcy Judges

FEDERMAN, Bankruptcy Judge

  This is a preference action under 11 U.S.C. § 547 by David G. Velde, the Chapter 7 Trustee, to recover a payoff payment to Border State Bank from the proceeds of the Debtor's liquidation sale. The Bankruptcy Court[1] denied the Bank's motion for summary judgment, holding that the perfection of the Bank's lien was within the perfection period under § 547(b) and that the "floating lien" defense in § 547(c)(5) did not provide a defense to a security interest that was actually perfected during the preference period. Following a trial, the Court entered judgment in the Trustee's favor as to $242,824.04, after giving the Bank a credit for $13,579.98 which had been in the Debtor's account at the Bank before the liquidation began. Both sides appeal. For the reasons that follow, we AFFIRM in all respects, except that we REVERSE the Court's giving the Bank credit against the judgment for $1,403.07 in consulting fees incurred by the Bank. The case is REMANDED for entry of judgment in the amount of $244,227.11.

## FACTUAL BACKGROUND

  On September 11, 2007, Debtor HovdeBray Enterprises executed a promissory note for $350,000 in favor of Border State Bank of Roseau in connection with an

---

[1] The Honorable Dennis D. O'Brien, United States Bankruptcy Judge for the District of Minnesota.

2

operating loan for the Debtor to purchase inventory for its Ben Franklin Store. The Debtor granted the Bank a security interest in essentially all of its personal property including inventory, accounts, fixtures and proceeds. The Bank did not file a financing statement with the Minnesota Secretary of State's office at that time and, therefore, the parties agree that the Bank's lien was not properly perfected at the time of the loan.

Sometime mid-year in 2010, the Bank received financial information from the Debtor which raised concerns. At that point, the Bank hired Dan Schults d/b/a Retail Consulting Services to give the Bank an analysis of the status of the business. Mr. Schults issued a written analysis to the Bank dated June 14, 2010. The Debtor then stopped making payments. On July 6, 2010, the Bank demanded immediate payment of the $251,104,73 then outstanding on the loan.

According to the Debtor's principal, Michael Allen Hovde, the Bank gave him no option but to liquidate. By agreement dated July 7, 2010, the Debtor and Bank agreed that the Debtor would retain a liquidation service and conduct a going-out-of-business sale. The Bank then filed its UCC financing statement with the Secretary of State on July 13, 2010, for the first time perfecting its lien in the inventory, accounts, fixtures, and proceeds.

The going-out-of-business sale occurred between July 21, 2010 and August 27, 2010. Gross proceeds from the sale were $426,571.79. All of those funds went into the Debtor's account at the Bank. Of those funds, the Bank says that $256,672.02 went to pay its note in full. An additional $6,403.07 was paid to the Bank as reimbursement for the services of the liquidation company. The balance went to pay other expenses of the liquidation, including payroll and taxes. According to the Bank, after payment of the Bank's Note, the Debtor had $41,353.15 remaining.

3

As of July 13, 2010 – the day the financing statement was filed with the Secretary of State – the amount owed to the Bank, including unpaid principal and interest, was $251,517.03 and the value of the inventory was estimated to be in excess of $450,000. Thus, the Bank asserts it was oversecured on July 13, 2010.

Also as of July 13, 2010, the balance in the Debtor's deposit account was $13,579.98. The Bank asserts that it had setoff rights to this account, regardless of whether it had a validly perfected security interest in other assets of the Debtor.

An involuntary Chapter 7 petition was filed against the Debtor on October 11, 2010, and David G. Velde was appointed as Chapter 7 Trustee. The Chapter 7 Trustee sought to avoid the payment of the Bank's debt as a preference. The Bankruptcy Court denied the Bank's motion for summary judgment, holding that the perfection of the lien was within the perfection period under § 547(b) and that § 547(c)(5) did not provide a defense to a security interest that was actually perfected during the preference period. The Court then had a trial, and entered judgment in the Trustee's favor on the merits as to all but the $13,579.98 which was in the account before the liquidation. Both sides appeal.

## DISCUSSION

Section 547(b) permits the Trustee to recover certain transfers made within the 90 days prepetition. Specifically, that statute provides, in relevant part:

> (b) Except as provided in subsection (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property –
>
> > (1) to or for the benefit of a creditor;
> >
> > (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

4

(3) made while the debtor was insolvent;

(4) made –

    (A) on or within 90 days before the filing of the petition . . . ; and

(5) that enables such creditor to receive more than such creditor would receive if –

    (A) the case were a case under chapter 7 of this title;
    (B) the transfer had not been made; and
    (C) such creditor received payment of such debt to the extent provided by the provisions of this title.[2]

The Bank did not contest that the transfer of funds amounting to $256,422.02 was made within the 90 days prior to the Debtor's involuntary bankruptcy filing or that the transfer otherwise met the definition of a preference under § 547(b); rather, the Bank asserted that it had defenses to the preference.

## I.  The Bank's Appeal

### *A.  The Floating Lien Defense - Denial of Summary Judgment*

The Bank asserts that it had a "floating lien" or "inventory/accounts receivable" defense under § 547(c)(5).  This was the subject of its summary judgment motion, which the Court denied.

---

[2]  11 U.S.C. § 547(b).

Section 547(c) provides that the trustee may not avoid under § 547 a transfer

–

(5) that creates a perfected security interest in inventory or a receivable or the proceeds of either, except to the extent that the aggregate of all such transfers to the transferee caused a reduction, as of the date of the filing of the petition and to the prejudice of other creditors holding unsecured claims, of any amount by which the debt secured by such security interest exceeded the value of all security interests for such debt on the later of –

    (A)    (i) with respect to a transfer to which subsection (b)(4)(A) of this section applies, 90 days before the date of the filing of the petition; or

            (ii) with respect to a transfer to which subsection (b)(4)(B) of this section applies, one year before the date of the filing of the petition; or

    (B) the date on which new value was first given under the security agreement creating such security interest.[3]

Thus, 547(c)(5) generally provides a defense to a creditor which holds a floating lien – *i.e.*, one that automatically attaches to inventory and receivables acquired by an obligor after the loan is made. The mere fact that such assets are acquired during the preference period does not make the automatic lien attachment a preference. The "improvement of position" test is a limitation on the floating lien defense. If a creditor begins the preference period with collateral worth less than the amount owed it, and as a result of after-acquired inventory and receivables the amount of any such deficiency is thereafter reduced, the floating lien defense is not available to the extent of such reduction (improvement in the creditor's position).[4]

---

[3]  11 U.S.C. § 547(c)(5).

[4]  *See In re Qualia Clinical Service, Inc.,* 652 F.3d 933, 937-938 (8th Cir. 2011).

The Debtor's bankruptcy case was commenced by the filing of the involuntary petition on October 11, 2010. The parties agree that the relevant 90-day period for calculating the improvement of position period started on July 13, 2010, which was the day the Bank perfected its security interest in the Debtor's inventory.[5] Since the Bank's security interest in the Debtor's inventory and accounts receivable became perfected on that date, the Bank asserts it was fully secured at the beginning of the preference period, and therefore did not improve its position during that period. In focusing on the "improvement in position" test, however, the Bank misses the first step in asserting the § 547(c)(5) defense, namely the need to prove that it held a validly-perfected floating lien which automatically attached to Debtor's inventory.

The Eighth Circuit in *Qualia* emphasized that, for purposes of the § 547(c)(5) defense, the focus is on the creditor's position at the moment it enters the preference period:

> Inova seeks to gain the benefit, under the "improvement in position" test, of an unrecorded (and thus unperfected) lien of which other would-be creditors were unaware. Its argument pre-supposes that Congress meant the term "all security interests" in the 547(c)(5)(A) test to include unperfected security interests. We reject that supposition. Recognizing the reason why Congress enacted the "improvement in position" test, and the great prejudice to other creditors inherent in Inova's position, we hold that the statutory "improvement in position" tests presuppose a creditor holding a perfected security interest as of the date of the first testing point. *A creditor who, like Inova, enters the test period unperfected is properly deemed, for purposes of section 547(c)(5), to have an interest of zero value.*[6]

---

[5] Fed. R. Bankr. P. 9006(a). *See In re Raynor*, 617 F.3d 1065, 1070 (8th Cir. 2010) (holding that the statute of limitations for bringing a fraudulent transfer action under § 546 was subject to Rule 9006).

[6] 652 F.3d at 939 (emphasis added).

This holding is entirely consistent with § 547(b)(4)(A), which avoids transfers "on or within 90 days before the filing of the petition." Here, the Bank entered the preference period (July 13, 2010) unperfected. The transfer in question – the perfection of its security interest – was made "on" the 90th day prior to the petition. Once the Bank perfected its lien, it did not improve its position since it became oversecured and remained oversecured until its loan was paid in full. But the perfection itself was avoidable as a preference. The fact that the Bank perfected its security interest during the preference period cannot be used to bootstrap itself into asserting that it did not improve its position during that period. Since the Bank has not established that it held a properly perfected floating lien at the outset of the test period, the § 547(c)(5) floating lien defense is not available to it.

Consequently, the Bankruptcy Court did not err in holding that § 547(c)(5) did not apply and in thus ruling in favor of the Trustee on the Bank's motion for summary judgement.

### B. The Ordinary Course of Business Defense

Next, the Bank asserts that the payments it received during the going-out-of-business sale were made in the ordinary course of business and/or according to ordinary business terms under § 547(c)(2). The "ordinary course of business" defense in 11 U.S.C. § 547(c)(2) provides:

> (c) The trustee may not avoid under this section a transfer—
>
> > (2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was –

(A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or

(B) made according to ordinary business terms.[7]

The Bank does not take issue with the Bankruptcy Court's conclusion that payment from the liquidation was not within the ordinary course as between the parties. Rather, pointing out that the ordinary course defense is disjunctive, the Bank asserts that the Court ignored the second alternative, namely whether the payments made pursuant to the store closing agreement were made according to ordinary business terms. It asserts that based on business difficulties the Debtor encountered, the Bank and the Debtor mutually agreed to retain the services of a liquidation company to conduct a liquidation sale for the Debtor. Further, the terms of the contract were customary for this type of liquidation situation and the payments made to the Bank were in accord with the terms of the store closing contract. Accordingly, the Bank says, the liquidation payments were made "according to ordinary business terms" under § 547(c)(2)(B).

Although courts have held that the acceptance of late payments and payments under a restructuring agreement are not *per se* outside the ordinary course of business exception,[8] we fail to see how payment in full from a going-out-of-business sale resulting in the cessation of the business itself could be considered ordinary course in any business or industry. The Bankruptcy Court did not err in holding that liquidation as part of the cessation of the Debtor's business was not "ordinary course."

---

[7] 11 U.S.C. § 547(c)(2).

[8] *See In re U.S.A. Inns of Eureka Springs, Arkansas, Inc.*, 9 F.3d 680 (8th Cir. 1993); *In re Kaypro*, 218 F.3d 1070 (9th Cir. 2000).

## C. The New Value Defense

Third, the Bank asserts that § 547(c)(4)'s new value defense applies.[9] That section provides that the trustee may not avoid under this section a transfer—

> (4) to or for the benefit of a creditor, to the extent that, after such transfer, such creditor gave new value to or for the benefit of the debtor—
>
> > (A) not secured by an otherwise unavoidable security interest; and
> >
> > (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor.

The term "new value" is defined as:

> (2) "new value" means money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation.[10]

According to the Bank, § 547(c)(4) provides that any preferential payment or transfer received by a creditor is to be set off against any subsequent unsecured transfer the creditor makes to the debtor. In other words, a creditor who receives a preference, but who subsequently gives new value that is unsecured, has a nonavoidable preference to the extent that the debtor's estate, temporarily depleted

---

[9] The Bank does not appeal from the Court's rejection of its new value defense under § 547(c)(3).

[10] 11 U.S.C. § 547(a)(2)

by the transfer to the creditor, is subsequently replenished by unsecured new value.[11] In this case, the Bank says it replenished the Debtor's estate by the sum of $6,403.07 as payment to the liquidation company and some $164,000 in funds released from the account in which it had setoff rights to allow the Debtor to conduct the going-out-of-business sale in an attempt to maximize revenues – those sums constituting new value under § 547(c)(4).

First, as the Bankruptcy Court pointed out, the Bank bases its new value defense on the fact that it released money in which it had a security interest by virtue of its setoff rights. Section 553 does provide that an account with setoff rights is a secured claim in a bankruptcy case.[12] However, as the Court held, the liquidation proceeds transferred into the Debtor's account at the Bank were transferred within the preference period while the Debtor was insolvent and for the express purpose of satisfying the entire antecedent debt to the Bank.

> To determine if funds were acquired by a bank for the purpose of obtaining a right of setoff courts consider whether the deposit was made in good faith, in the regular course of business and subject to withdrawal at the will of the depositor. The set-off exception does not apply where a deposit is accepted by a bank with an intent to apply it on a preexisting claim against the depositor. If the deposit was made with the purpose of effecting payment to the bank § 553(a)(3)(C) is met and setoff is not allowed. If either the depositor or the bank intends that a deposit may not be withdrawn but must be used to satisfy the bank's claim, the

---

[11] *Citing In re Armstrong*, 291 F.3d 517 (8th Cir. 2002); *Southern Technical College, Inc. v. Hood*, 89 F.3d 1381 (8th Cir. 1996) (holding that lessee received new value for purposes of § 547(c)(4) when it continued to use and occupy leased property rent free, enabling it to continue operations and to generate income which replenished the estate).

[12] 11 U.S.C. § 553(a).

deposit constitutes a voidable preference when other elements of that statute are met.[13]

Since the purpose of the liquidation, and deposit into the account, was to pay the Bank's debt, the Court properly found that the Bank did not obtain a setoff right against the liquidation proceeds. Moreover, although the Bank says it did not get paid until after the new value money had been released, the money was not released for purposes of allowing the Debtor to continue its business; rather, the evidence was that the Bank approved all disbursements during the liquidation period and that it only approved payment of expenses actually incurred in connection with the sale. In other words, the Bank did not release any of the liquidation proceeds, other than expenses associated with the sale, until it was satisfied that it was going to be paid in full. Indeed, no other creditors were paid on preexisting debts. The new value exception is not intended to apply to a situation where the creditor is, in effect, conducting a liquidation of the Debtor so that it can be paid in full. The Bankruptcy Court did not err in rejecting the Bank's new value defense.

## II.  The Trustee's Cross-Appeal

### *A.  The Bank's Setoff Defense as to the Money in the Account Before the Preference Period*

At the start of the preference period, the Debtor had on deposit with Defendant Bank the sum of $13,579.98. Those funds were included in the total received by the Bank along with other proceeds from liquidation of its collateral. The Bankruptcy Court held that the $13,579.98 was subject to the Bank's setoff rights under § 553(a), and that therefore the receipt of such funds was not a preference. Section 553(a)

---

[13]  *Kroh Bros. Development Co. v. Commerce Bank of Kansas City, N.A.*, 86 B.R. 186, 191-192 (Bankr. W.D. Mo. 1988) (citations and internal quotation marks omitted).

preserves, with certain exceptions, the right of setoff of mutual debts owed prepetition between a debtor and a creditor. The Trustee argues in his cross-appeal that since the Bank did not actually exercise any setoff rights against the Debtor's account on the 90th day prior to the bankruptcy filing, the benefit of § 553 is not available to it.

However, the issue here is not whether the Bank set off the funds on the 90th day; rather, the proper focus should be that the Bank held a security interest in such funds at the start of the preference period, by virtue of its setoff rights under the loan documents and state law, and maintained that security interest until the funds were paid to it. The Trustee does not dispute that the Bank held a duly perfected security interest in the Debtor's funds on deposit at the Bank and, therefore, held setoff rights against those funds.[14]

Instead, the Trustee relies on *Formtech Industries, LLC*[15] for the proposition that any setoff rights must actually be exercised to be effective under § 553. However, even if § 553 were applicable, it contains an exception for sales under § 363, and *Formtech* involved such a sale. He also relies on *Baker v. National City Bank of Cleveland*,[16] which dealt with the steps a bank must take to effectuate a setoff of a customer's account. That case is not relevant here because the issue is not whether the Bank actually effectuated a setoff; instead, since the Bank held a security interest in those funds, it did not receive a preference by receipt of such funds. For these reasons, payment to the bank of funds which were held in Debtor's account at

---

[14] The Bank's loan and security agreement clearly provides the Bank a security interest in all such funds on deposit, which security interest is automatically perfected by virtue of the depository bank having control over the account. *See* Minn. Stat. Ann. §§ 336.9-314(a) and 336.9-104(a).

[15] 439 B.R. 352, 361-62 (Bankr. D. Del. 2010).

[16] 511 F.2d 1016 (6th Cir. 1975).

13

the Bank at the start of the liquidation period was not a preferential transfer or an improper setoff.

### B. The Deduction of $1,403.07 in Consulting Fees

Finally, the Trustee argues that the Bankruptcy Court committed clear error in its mathematical calculation of the judgment amount.

Specifically, the amount paid to the Bank during the preference period was $262,825.09. After deducting the $13,579.98 in the Debtor's account before the liquidation, the Court gave the Bank credit for an additional $6,403.07 which was paid to the Bank on July 23 and 26, 2010, $5,000 of which represented a deposit to the retail liquidator for his services. The Bank officer testified, however, that the other $1,403.07 for which credit was given was paid by the Bank for the consulting fee the retail liquidator charged the Bank for originally assessing the situation at the Bank's request. This was a service ordered by the Bank for the primary purpose of informing it on the best chance it would have to recover on its entire indebtedness. The Court did not include any mathematical calculation details in its Order, but based on the Court's judgment amount, it appears that the Court gave the Bank credit for the full $6,403.07. The Trustee appears to concede that the Court should have deducted the $5,000 deposit, but asserts that Court should not have deducted the $1,403.07.

We agree. The Bank should be required to pay for the services it hired to analyze its own best strategy, and the Court committed clear error in giving it credit for that expenditure. Therefore, the amount of the judgment against the Bank should be increased by $1,403.07.

ACCORDINGLY, the Bankruptcy Court's decision is AFFIRMED in all respects except as to the deduction of $1,403.07, which is REVERSED. The net

amount of the preferential transfer is $244,227.11.  The case is REMANDED to the Bankruptcy Court for entry of judgment in that amount.

———————————