# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

## No. 10-6021

_____

In re: Qualia Clinical Service, Inc.,      *

        Debtor.      *

Rick D. Lange, Trustee of the Chapter 7 Bankruptcy Estate of Qualia Clinical Service, Inc.,      *

        Plaintiff – Appellee,      *

        v.      *

Inova Capital Funding, LLC; Inova Capital Funding, Inc.,      *

        Defendants – Appellants.      *

Appeal from the United States Bankruptcy Court for the District of Nebraska

_____

Submitted: December 3, 2010
Filed: January 14, 2010

_____

Before KRESSEL, Chief Judge, SCHERMER and NAIL, Bankruptcy Judges.

_____

KRESSEL, Chief Judge.

Inova[1] appeals from the bankruptcy court's[2] order of April 6, 2010 denying its motion for summary judgment, granting the trustee's motion for summary judgment, and avoiding Inova's security interest as a preferential transfer. We affirm.

BACKGROUND

Qualia Clinical Services, Inc. is a Nevada corporation. Its principal place of business is in Omaha, Nebraska. Inova Capital Funding, Inc. was incorporated in California on January 4, 2007. Inova Capital Funding, LLC was formed in Delaware on September 30, 2008.

On December 11, 2007, Inova and Qualia entered into a contract referred to as the "Invoice Purchase Agreement." The agreement provided that Inova would purchase "acceptable accounts receivable at a discount below the face value thereof," and provided for an ongoing security interest in Qualia's property such as accounts, inventory, instruments, records, and general intangibles, in order to protect Inova from any chargeback of disputed or unpaid invoices or accounts and any liability resulting from any breach of Qualia's warranties.

Inova Capital Funding, Inc. filed a U.C.C. financing statement with the Nebraska Secretary of State on December 12, 2007. That financing statement named it as the secured party and Qualia as the debtor and covered accounts, inventory, instruments, records, and general intangibles. Inova last gave new value to Qualia on February 5, 2009 when it purchased invoices. Inova Capital Funding, Inc. filed another U.C.C. financing statement on February 19, 2009 naming itself

---

[1] For convenience, the parties and the bankruptcy court have referred to Inova Capital Funding, Inc. and Inova Capital Funding, LLC simply as "Inova." We likewise refer to the appellants collectively as Inova except where a distinction is necessary.

[2] The Honorable Timothy J. Mahoney, United States Bankruptcy Judge for the District of Nebraska.

as the secured party and Qualia as the debtor and covering accounts, inventory, instruments, records, and general intangibles. The second financing statement was filed with the Nevada Secretary of State on February 19, 2009.

Qualia filed a chapter 11 bankruptcy petition on March 18, 2009. The case was converted to one under chapter 7 in October of 2009 on the motion of the United States Trustee, and Rick D. Lange was appointed trustee. The trustee initiated this adversary proceeding against Inova Capital Funding, LLC and Inova Capital Funding, Inc. The trustee alleged that the invoice purchase agreement between Qualia and Inova was a financing arrangement and not a true sale, and he sought to avoid as a preference the lien Inova received by filing its February 19, 2009 financing statement within 90 days of Qualia's bankruptcy filing.

Inova moved for summary judgment, solely on the basis of 11 U.S.C. § 547(c)(5). Inova argued that it could not have improved its position to the detriment of Qualia's unsecured creditors because Inova was fully secured on the 90th day before Qualia's bankruptcy, on the dates of transfers during the preference period, and on the date that it filed its U.C.C. financing statement. On March 4, the trustee moved for "summary judgment or partial summary in his favor and against Defendants on all of Trustee's claims."

On April 6, 2010, the bankruptcy court denied the Inova's motion for summary judgment, granted the trustee's motion for summary judgment, and avoided the February 19, 2009 U.C.C. filing as a preferential transfer. The bankruptcy court found that the invoice purchase agreement was clearly and unambiguously a financing arrangement. The court made that finding on the terms of the agreement itself. In particular, the court noted the recourse provisions contained in section 7.02 of the agreement, which shift all collection risks to Qualia. The court found that because the agreement was a financing arrangement and not a sale, Inova's actions to perfect its security interest could constitute a preference if the elements were otherwise demonstrated.

The bankruptcy court applied California law because the invoice purchase agreement designated that as the applicable law and Nebraska courts generally give effect to the parties' choice of law. *DCS Sanitation Mgmt., Inc. v. Castillo*, 435 F.3d 892, 895096 (8th Cir. 2006); Rest. (2d) Conflicts of Laws § 187(1). The court found that under the California Commercial Code, when the debtor is a registered organization, the security interest must be perfected by filing a financing statement where it was organized. Because Qualia was organized in Nevada, the Nebraska filing was ineffective. The Nevada filing was filed within 90 days preceding Qualia's bankruptcy, and the court concluded it was therefore preferential. The court rejected Inova's § 547(c)(5) defense, noting that § 547(c)(5) is intended to protect holders of floating liens. The court found that Inova had improved its position to the detriment of unsecured creditors because its security interest was unperfected 90 days prior to the bankruptcy filing and on the date it last gave new value to Qualia.

The Inova parties appeal from the bankruptcy court's April 6, 2010 order.

## STANDARD OF REVIEW

We review summary judgments and the interpretation of contracts *de novo*. *Bremer Bank v. John Hancock Life Ins. Co.*, 601 F.3d 824, 829 (8th Cir. 2010). "Summary judgment is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, there is no material factual dispute. Fed.R.Civ.P. 56(c)." *Id*.

## DISCUSSION

Inova argues that the bankruptcy court should have granted summary judgment to Inova and not to the trustee because, as a matter of law, § 547(c)(5) does not require a security interest in receivables to be perfected at the beginning of the preference period. Inova believes it was entitled to summary judgment

because it was oversecured on the 90th day before Qualia's bankruptcy as well as on all dates within the preference period.

In order to prevail in an action under § 547(b), the trustee must demonstrate the following: "(1) [. . .] a transfer of an interest of the debtor in property, (2) on account of an antecedent debt, (3) to or for the benefit of a creditor, (4) made while the debtor was insolvent, (5) within 90 days prior to the commencement of the bankruptcy case, (6) that left the creditor better off than it would have been if the transfer had not been made and the creditor asserted its claim in a Chapter 7 liquidation." *Buckley v. Jeld-Wen, Inc. (In re Interior Wood Prods. Co.),* 986 F.2d 228, 230 (8th Cir. 1993). The parties only dispute whether there was a transfer of an interest of the debtor in property, and whether the security interest was perfected within 90 days prior to the commencement of the case. The bankruptcy court found that as a matter of law, both elements were satisfied. We agree.

The resolution of the first issue depends on whether the receivables were bought or pledged through the December 2007 agreement. If they were bought, then no interest was transferred when Inova filed its security interest within the preference period. If they were pledged, then the filing of Inova's security interest constituted perfection, and brings it within the scope of § 547(b). *See* § 547(e)(2). The bankruptcy court properly looked to the contract to determine whether the receivables were purchased or pledged. Based on the contract, the bankruptcy court determined that the original transaction was a loan, not a sale.

We agree with the bankruptcy court that the invoice purchase agreement is clearly and unambiguously a financing agreement rather than a true sale. An unambiguous contract presents legal issues, which are appropriate for summary judgment. *Erker v. Am. Cmty. Mut. Ins. Co.*, 663 F. Supp. 2d 799, 805 (D. Neb. 2009). "An ambiguity exists when the instrument at issue is susceptible of two or more reasonable but conflicting interpretations or meanings. Moreover, the fact that the parties have suggested opposing meanings of the disputed instrument does not necessarily compel the conclusion that the instrument is ambiguous." *Boyles v.*

5

*Hausmann*, 517 N.W.2d 610, 615 (Neb. 1994). The parties both asserted that the contract was unambiguous, although they suggest opposing meanings.

The California Commercial Code offers little guidance, instead leaving to the courts the determination of whether a transaction was a sale or loan. Cal. Com. Code § 9109 cmt. 4 (2010) ("Although this Division occasionally distinguishes between outright sales of receivables and sales that secure an obligation, neither this Division nor the definition of 'security interest' (Section 1201(37)) delineates how a particular transaction is to be classified. That issue is left to the courts."). Therefore, courts have looked to the nature of the transaction in order to determine whether it is a sale or a loan.

"The question for the court then is whether the Nature of the recourse, and the true nature of the transaction, are such that the legal rights and economic consequences of the agreement bear a greater similarity to a financing transaction or to a sale." *Major's Furniture Mart, Inc. v. Castle Credit Corp., Inc.*, 602 F.2d 538, 544 (3d Cir. 1979). In this case, the bankruptcy court noted the agreement's recourse provision, which "completely shifts the risk of the uncollectibility of the account to Qualia, despite the agreement's characterization as a 'sale.'" *Qualia Clinical Service, Inc. v. Lange (In re. Qualia Clinical Service, Inc.)*, 2010 WL 1441495, \*3 (Bankr. D. Neb. Apr. 6, 2010). The provision is as follows:

> 7.02 RECOURSE. This is a full recourse agreement. As such, ICF may charge back to [Qualia] and [Qualia] shall repurchase from ICF (by paying to ICF the full amount owed by the customer on the account) any account for any of the following reasons:
>
> 7.02.01. [Qualia] has breached any warranties or promises in this agreement with regard to the account or is otherwise in default under this Agreement;
>
> 7.02.02 [Qualia] has contributed to, or aggravated a customer Credit Problem with respect to the account;

7.02.03 [Qualia] and customer are involved in a dispute of any kind, regardless of validity, with respect to the account;

7.02.04 Customer asserts a claim of loss or offset of any kind against [Qualia] or ICF with respect to the account;

7.02.05. An account is deemed mistaken, incorrect, fraudulent and/or erroneous by ICF; or

7.02.06. [T]he full amount of the account is not paid to ICF within the number of "Chargeback Days" from the date of purchase by ICF specified in the Rate Schedule.

Invoice Purchase Agreement ¶ 7.02, at 6. The bankruptcy court reasoned that if the transaction were a true sale, Inova would have accepted the accounts as they were, whether or not they were collectible. We agree.

This agreement, which shifts all risk to Qualia, is a disguised loan rather than a true sale. Where the "seller" retains "virtually all of the risk of noncollection," the transaction cannot properly be considered a true sale. *Nickey Gregory Co., LLC v. AgriCap, LLC*, 597 F.3d 591, 602 (4th Cir. 2010). *See also Fireman's Fund Ins. Cos. v. Grover (In re Woodson)*, 813 F.2d 266 (9th Cir. 1987) (finding transaction to have been a disguised loan where seller insured buyer against loss); *Bear v. Coben (In re Golden Plan of California, Inc.)*, 829 F.2d 705, 709-10 (9th Cir. 1986) (finding that there had been a true sale where "investors received no contractual guarantee of repayment or compensation in case of foreclosure. Such assumption of risk strongly suggests that the . . . investors were not in a creditor-debtor relationship"); *Major's Furniture Mart, Inc.,* 602 F.2d at 545 ("In the instant case the allocation of risks heavily favors Major's claim to be considered as an assignor with an interest in the collectibility of its accounts. It appears that Castle required Major's to retain all conceivable risks of uncollectibility of these accounts"); *Netbank, FSB v. Kipperman (In re Commercial Money Center, Inc.)*, 350 B.R. 465, 484 (B.A.P. 9th Cir. 2006) (finding transaction to have been a loan where seller "(1) has none of the potential

7

benefits of ownership and (2) is contractually allocated none of the risk of loss"); *CF Motor Freight v. Schwartz (In re De-Pen Line, Inc.)*, 215 B.R. 947, 951 (Bankr. E.D. Pa. 1997) (finding there had not been a true sale where "the risks which are characteristic of a true sale are not accepted by DIL in the Agreement"); *Ables v. Major Funding Corp. (In re Major Funding Corp.)*, 82 B.R. 443, 448 (Bankr. S.D. Tex. 1987) (finding there had not been a true sale where "investors did not shoulder the normal risks of ownership").

Because the transaction was a disguised loan rather than a true sale, the perfection of the security interest was a transfer of an interest in the debtor's property.[3] The only remaining issue is whether the interest was perfected within the 90-day period. We agree with the bankruptcy court that it was perfected within the preference period. The California Commercial Code provides that a security interest is perfected by filing a financing statement in the debtor's location, which is where the debtor was organized. Cal. Comm. Code §§9301, 9307(e), 9308, 9310(a) (West 2007). Because Qualia was organized in Nevada, the Nebraska filing was ineffective. Inova's interest was perfected when it filed its second financing statement, which was with the Nevada Secretary of State on February 19, 2009. Because that was within 90 days of Qualia's bankruptcy filing, as a matter of law the perfection constituted a preference.

Inova argues that even if the elements of preference are satisfied, the transfer cannot be avoided as a preference because 11 U.S.C. § 547(c)(5) is an absolute defense. Section 547(c)(5) provides:

(c) The trustee may not avoid under this section a transfer—

[. . .]

---

[3] Even if we were to conclude that the transaction was a true sale, Inova's perfection still would constitute a preference under § 547(b). Under the California Commerical Code § 9318(b), if the buyer has not perfected its interest in accounts after the sale, the debtor still has the rights and title to the accounts for the purpose of determining the rights of third parties.

(5) that creates a perfected security interest in inventory or a receivable or the proceeds of either, except to the extent that the aggregate of all such transfers to the transferee caused a reduction, as of the date of the filing of the petition and to the prejudice of other creditors holding unsecured claims, of any amount by which the debt secured by such security interest exceeded the value of all security interests for such debt on the later of—

> (A)(i) with respect to a transfer to which subsection (b)(4)(A) of this section applies, 90 days before the date of the filing of the petition; or (ii) with respect to a transfer to which subsection (b)(4)(B) of this section applies, one year before the date of the filing of the petition; or

> (B) the date on which new value was first given under the security agreement creating such security interest.

11 U.S.C. § 547(c)(5). In support of this argument, Inova asserts that it achieved no improvement in position because it was oversecured on all relevant dates, and that it gave new value. The purpose of § 547(c)(5) is to protect holders of floating liens, and to simplify and make fair the situation they encounter in bankruptcy when the value of their collateral has gone down and back up. Inova's arguments are irrelevant because they assume perfection at the beginning of the preference period. Although it is true that an oversecured creditor cannot improve its position for the purposes of this defense, Inova was actually unsecured at all relevant times because Inova's interest was unperfected both at the beginning of the preference period and on the last date it gave new value. Section 547(c)(5) therefore does not provide a defense to the trustee's preference action.

Inova next argues that the bankruptcy court erred in granting the trustee's motion for summary judgment because there are genuine issues of material fact regarding whether the receivables were purchased or pledged as collateral. As discussed above, the contract is unambiguous, so the question of whether the

9

receivables were purchased or pledged is a legal issue and it was properly resolved in the trustee's favor on the parties' motions for summary judgment.

Third, Inova argues that there were genuine issues of material fact regarding defenses other than § 547, and that the bankruptcy court should have provided Inova with the opportunity to be heard on the additional defenses it raised in its answer. Inova only sought a ruling on its § 547 defense, although it asked for summary judgment rather than partial summary judgment. The parties submitted a joint pretrial statement. In it, under the heading "Defendant's Objections and Defenses," the parties stated the following:

> The Defendant has numerous defenses in this *case as enumerated in its Answer to the Amended Complaint*. (Dkt. No. 23). For the sake of time and expense, and given the questionable collectability of the outstanding invoices, the Defendant has discussed with the Trustee initially filing a motion for summary judgment under 547(c)(5) and possibly other defenses for which there do not appear to be genuine issues of material fact for trial, or for which the issues of fact necessary for the court to make a determination of law are fairly straightforward and/or already in the prior affidavits filed with the court in the bankruptcy proceedings. *If that motion and/or any cross motions by the Trustee leave issues for trial, then the remaining issues and defenses remain for disposition by the court under a subsequent Rule 56 motion or at trial.*

Joint Prelim. Trial Statement 3 (emphasis added). Based on this, Inova now argues that the bankruptcy court should have limited its decision to the § 547 defense. However, the trustee's subsequent summary judgment motion clearly stated that the trustee was seeking summary judgment "in his favor and against Defendants on all of Trustee's claims." That language should have alerted Inova to the fact that the bankruptcy court could dispose of the entire proceeding. Inova had the opportunity to raise any of its defenses. It was not improper for the court to decide the motions before it, regardless of Inova's intention to receive a ruling only on its § 547 defense. Furthermore, we will not ordinarily consider arguments raised for

the first time on appeal.  *Duncan v. LaBarge (In re Duncan)*, 418 B.R. 278 (B.A.P. 8th Cir. 2009).

Finally, Inova asks us to reverse the bankruptcy court's determination that Inova Capital Funding, LLC was the successor in interest to Inova Capital Funding, Inc.  Inova has not explained how this finding is relevant to the court's ultimate determinations, or how it was harmed by it.  We therefore decline to review the bankruptcy court's determination on this issue.

## CONCLUSION

Because we agree with the bankruptcy court that the trustee was entitled to summary judgment on this preference action, we affirm.

_____