# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

No. 11-1201

| | | |
|---|---|---|
| In re: Qualia Clinical Service, Inc., | * | |
| | * | |
| Debtor. | * | |
| | * | |
| | * | |
| Rick D. Lange, as Chapter 7 Trustee | * | |
| for the Bankruptcy Estate of Qualia | * | Appeal from the Bankruptcy |
| Clinical Service, Inc., | * | Appellate Panel for the |
| | * | Eighth Circuit. |
| Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Inova Capital Funding, LLC, | * | |
| Inova Capital Funding, Inc., | * | |
| | * | |
| Appellants. | * | |

Submitted:   June 14, 2011
Filed:   August 30, 2011

Before COLLOTON, CLEVENGER,[1] and BENTON, Circuit Judges.

---

[1]The Honorable Raymond C. Clevenger III, Circuit Judge for the United States Court of Appeals for the Federal Circuit, sitting by designation.

CLEVENGER, Circuit Judge.

This case concerns the bankruptcy estate of Qualia Clinical Service, Inc. ("Qualia"). The estate's Chapter 7 Trustee ("Trustee") seeks to avoid as a preferential transfer a security interest recorded by one of Qualia's creditors shortly before the bankruptcy petition. The bankruptcy court[2] and the Bankruptcy Appellate Panel of this court ("BAP") held the security interest avoidable. Lange v. Inova Capital Funding, LLC (In re Qualia Clinical Serv., Inc.), No. 09-8041, 2010 WL 1441495 (Bankr. D. Neb. Apr. 6, 2010) [hereinafter Bankr. Ct. Op.], aff'd, 441 B.R. 325 (B.A.P. 8th Cir. 2011) [hereinafter BAP Op.]. We agree, and so affirm.

I

Before it ceased operations and entered bankruptcy, Qualia's business was providing clinical studies and related services to pharmaceutical companies. From time to time, Qualia sent invoices to its customers and tracked their outstanding obligations as part of its accounts receivable. It is these invoices and these accounts receivable that occupy the center of this case.

On or about December 11, 2007, Qualia entered into an agreement with Inova Capital Funding.[3] Invoice Purchase Agreement ("IPA"), J.A. 49. The IPA gave

---

[2]The Honorable Timothy J. Mahoney, United States Bankruptcy Judge for the District of Nebraska.

[3]The contract as written is between Qualia and "Inova Capital Funding." Defendants are Inova Capital Funding, Inc. and Inova Capital Funding, LLC. The bankruptcy court applied its analysis to the entity "Inova," which it understood to mean Inova Capital Funding, Inc., "as well as the entity that executed the invoice purchase agreement." Bankr. Ct. Op., 2010 WL 1441495, at *2. It declined Defendants' request for a holding that Inova Capital Funding, LLC was the successor-in-interest to Inova Capital Funding, Inc. Defendants asked the BAP to reverse, but the BAP declined to address the issue. BAP Op., 441 B.R. at 332. In their briefing

Qualia the opportunity to obtain financing from Inova in the form of advance payment on Qualia's outstanding customer invoices. If Qualia wanted to receive advance payment on a given outstanding invoice, Qualia could propose to "sell" the invoice to Inova using an online system. If it agreed to the transaction, Inova would wire the advance funds to Qualia. Inova would then take over efforts to collect on the invoice.

The agreement included, however, a "Full Recourse" provision under which Qualia remained liable to Inova for the full face value of each invoice "sold" to Inova. IPA sec. 7.02, J.A. at 53. If Inova was unable to collect the full value of the invoice on its own, it could recover that value from Qualia. As collateral, the agreement conferred to Inova a security interest in Qualia's property, including its accounts receivable. Id. sec. 3, J.A. at 51–52.

Months passed. From time to time, Qualia used the online system to identify invoices for "sale" to Inova, and Inova paid Qualia advances on those invoices.

Then, on February 19, 2009, about eighteen months after execution of the IPA, Inova filed a UCC-1 financing statement in Nevada, Qualia's state of incorporation.[4] Nevada UCC-1, J.A. 375 (dated Feb. 19, 2009). Qualia filed for bankruptcy protection about a month later, on March 18, 2009.

_____

to this court, Defendants again referred to Inova Capital Funding, LLC as the successor-in-interest to Inova Capital Funding, Inc., but did not ask for relief and did not elaborate. Appellants Br. 9. For our part, we make no holding on the issue, and use the name "Inova" in the same manner as the bankruptcy court and the BAP.

[4]Inova had previously and erroneously filed such a statement in Nebraska, Qualia's principal place of business. The California Commercial Code provies the governing state law for this case. It states that a security interest is perfected by filing a financing statement in the debtor's location, which is where the debtor is organized. Cal. Com. Code §§ 9301, 9307(e), 9308, 9310. Neither party at this stage disputes that the Nebraska filing was insufficient to perfect Inova's security interest because Nevada is where Qualia is organized.

Shortly thereafter, the Trustee began an adversarial proceeding against Inova seeking to avoid Inova's lien on Qualia's accounts receivable as a preference under section 547 of the Bankruptcy Code. Compl., Dkt. #1, Qualia Clinical Serv. (Bankr. D. Neb. Jun. 25, 2009). Section 547 permits trustees to recover certain "preferential" liens entered against a debtor shortly before the debtor's bankruptcy:

> "Under the Bankruptcy Code's preference avoidance section, 11 U.S.C. § 547, the trustee is permitted to recover, with certain exceptions, transfers of property made by the debtor within 90 days before the date the bankruptcy petition was filed." Barnhill v. Johnson, 503 U.S. 393, 394 (1992). "This rule 'is intended to discourage creditors from racing to dismember a debtor sliding into bankruptcy and to promote equality of distribution to creditors in bankruptcy.'" Lindquist v. Dorholt (In re Dorholt, Inc.), 224 F.3d 871, 873 (8th Cir. 2000) (quoting Jones Truck Lines, Inc. v. Cent. States Se. & Sw. Areas Pension Fund (In re Jones Truck Lines, Inc.), 130 F.3d 323, 326 (8th Cir. 1997)).

Wells Fargo Home Mortg., Inc. v. Lindquist, 592 F.3d 838, 842 (8th Cir. 2010).

Inova moved the bankruptcy court for summary judgment that the lien was not avoidable. In its supporting brief, Inova argued that it had an affirmative defense under section 547(c)(5). That subsection excludes from avoidance liens placed on a debtor's inventory or accounts receivable, so long as the lien did not improve the creditor's position during the statutory test period . Braunstein v. Karger (In re Melon Produce, Inc.), 976 F.2d 71, 75 (1st Cir. 1992). Inova argued that its lien was immune from avoidance under either or both of subsections 547(c)(5)(A) (which looks for an improvement in position in the three months before the bankruptcy petition) and (c)(5)(B) (which looks for improvement between the first date on which "new value" was given and the petition). Inova claimed that it did not improve its position in the test period because the value of the receivables at all times exceeded the amount that had been advanced against the receivables. Inova's brief also included repeated

-4-

suggestions that the IPA between Inova and Qualia was not a financing agreement at all, but a "true sale" of invoices, although Inova did not articulate a defense along these grounds. <u>See</u> Defs. Br. Supp. Mot. Summ. J., Dkt. #34, <u>Qualia Clinical Serv.</u> (Bankr. D. Neb. Feb. 12, 2010).

The Trustee opposed Inova's motion and cross-moved for summary judgment that the lien was avoidable. The Trustee strongly disputed any suggestion that the IPA was a "sale" rather than a financing agreement, and attacked Inova's reliance on section 547(c)(5), though it did not draw any strong distinction between subsections (c)(5)(A) and (c)(5)(B). <u>See</u> Br. Supp. Trustee Mot. Summ. J. & Opp. Defs.' Mot. Summ. J., Dkt. #43, <u>Qualia Clinical Serv.</u> (Bankr. D. Neb. Mar. 4, 2010).

In its opposition to the Trustee's cross-motion, Inova renewed its arguments that the lien was immune from avoidance under section 547(c)(5). Inova also added a new argument that the lien was not a preferential transfer at all because the IPA set up "true sales" of invoices from Qualia to Inova. Inova argued that because the lien merely reflected a transfer that occurred upon "sale" of the invoice, it was not "for or on account of an antecedent debt owed by the debtor before such transfer was made" as required by section 547(b)(2). Defs.' Br. Opp. Trustee Mot. Summ. J., Dkt. #53, <u>Qualia Clinical Serv.</u> (Bankr. D. Neb. Mar. 25, 2010).

The bankruptcy court granted summary judgment to the Trustee. It rejected Inova's contention that the IPA was a true sale, holding that it was, "in substance, a financing arrangement," citing the IPA's recourse provision, and concluding that the lien therefore fell within the scope of section 547. <u>Bankr. Ct. Op.</u>, 2010 WL 1441495, at *3–4. The court went on to hold that the exclusion set up in section 547(c)(5) did not apply to Inova. The court reasoned that Inova's security interest was unperfected at all times prior to the February 19, 2009 financing statement, the filing of which necessarily improved Inova's position. <u>Id.</u> at *6.

Inova timely appealed to the BAP, where it presented essentially the same arguments. The BAP agreed that Inova could not benefit from section 547(c)(5). BAP Op., 441 B.R. at 332. It also interpreted the IPA as a financing agreement, not a true sale. Id. at 330–31. It further noted that even if the IPA were a true sale, Inova's February 19, 2009 filing created a preference. This is so because under California law, the debtor retained rights and title to the accounts until the time the security interest in them was perfected. Id. at 331 n.3 (citing Cal. Com. Code § 9318(b)). Inova timely appealed. This court has jurisdiction over appeals from the judgments of the BAP. 28 U.S.C. § 158(d)(1).

## II

In reviewing a decision of the BAP, this court "appl[ies] the same standard of review as the BAP." Morgan v. Goldman (In re Morgan), 573 F.3d 615, 623 (8th Cir. 2009). That is, this court reviews the factual findings of the bankruptcy court for clear error and its legal conclusions de novo. Id.

## III

In its briefing on appeal, Inova presented the same arguments it had to the bankruptcy court and the BAP: Inova viewed the IPA as a true sale and not a financing agreement, which it contended removed the lien from section 547's domain; and it asserted an affirmative defense under sections 547(c)(5)(A) and 547(c)(5)(B). During oral argument, however, the dispute boiled down to a single inquiry: as a result of the perfection of its security interest by the February 19, 2009 filing, did Inova improve its position as a creditor under section 547(c)(5)(A)? If so, the affirmative defense fails, the Trustee wins, and the lien is avoidable as a preference. If not, Inova wins, and section 547(c)(5) excludes the lien from avoidance.

We agree with the bankruptcy court and the BAP that Inova's lien is avoidable as a preference, for the following reasons.

## A

Section 547(c)(5) sets forth what is commonly known as the "improvement in position" test. The statutory language creating the test is somewhat complicated, but in application the test is straightforward. The statute reads:

> (c) The trustee may not avoid under this section a transfer—
>
> . . .
>
> > (5) that creates a perfected security interest in inventory or a receivable or the proceeds of either, except to the extent that the aggregate of all such transfers to the transferee caused a reduction, as of the date of the filing of the petition and to the prejudice of other creditors holding unsecured claims, of any amount by which the debt secured by such security interest exceeded the value of all security interests for such debt on the later of—
> >
> > > (A)(i) with respect to a transfer to which subsection (b)(4)(A) of this section applies, 90 days before the date of the filing of the petition; or
> > >
> > > > (ii) with respect to a transfer to which subsection (b)(4)(B) of this section applies, one year before the date of the filing of the petition; or
> > >
> > > (B) the date on which new value was first given under the security agreement creating such interest[.]

11 U.S.C. § 547(c).

The test in section 547(c)(5)(A) compares the situation of the creditor at different times. In all instances, one point in time is the date of filing of the bankruptcy petition. When the creditor is related to the debtor, he is deemed an "insider," see 11 U.S.C. § 101(31) (defining "insider"), and the second point in time for the test is one year before the date of filing the petition under section 547(c)(5)(A)(ii). This case does not involve insiders, so that second test date is

inapplicable. For application of the section 547(c)(5)(A) test to this case, the second date is 90 days before filing of the petition under section 547(c)(5)(A)(i).[5]

The first step in application of the 547(c)(5)(A) test is to determine the amount of the debt to the creditor and the value of the property securing the debt as of 90 days before the filing of the bankruptcy petition. The difference between those two numbers is established. The same determinations are made as of the date of the filing of the bankruptcy petition. The position of the creditor at the two points in time is compared. If during that time there has been a reduction of the amount by which the debt exceeded the value of the security, the creditor's position has been improved. Preferential transfers that create perfected floating liens are thus voidable to the extent of such improvement. See Samson v. Alton Banking & Trust Co. (In re Ebbler Furniture & Appliances, Inc.), 804 F.2d 87, 89–90 (7th Cir. 1986); 5 Collier on Bankruptcy ¶ 547.04[5] (2011).

A simple hypothetical demonstrates the situation in which a creditor's position may be improved. Assume on the 90th day before filing of a bankruptcy petition, a creditor is owed $1000, secured by a floating lien on inventory with the inventory then valued at $500, and as of the date of filing, the debt is the same but the inventory is valued at $1000. The creditor's position has improved in the 90 day period by $500, and that amount of the lien is voidable by the trustee. On the other hand, if the value of the security equals or exceeds the amount of the debt 90 days before the filing of a bankruptcy petition, the creditor's position is not improved as of the date of filing, even if the value of the security is greater as of that date.

Inova recognizes that the perfection of its security interest on February 19, 2009, within the 90 day time before the bankruptcy petition was filed, constituted a

---

[5]The relationship of the test in section 547(c)(5)(B) to this case is discussed in part B-2 below.

voidable preference unless excused by section 547(c)(5). This is because "[t]he creation of a perfected security interest is itself a preference when the creation or perfection takes place during the preference period." Braunstein, 976 F.2d at 74. Inova thus seeks relief under section 547(c)(5)(A) because it contends that it was oversecured 90 days before the bankruptcy petition was filed, and thus could not have improved its position. Specifically, Inova contends that on the 90th day before bankruptcy, Qualia's debt of $1,084,012.80 was secured by accounts receivable valued at $1,246,091.23. Appellants Br. 12. Even accepting those values as correct, the bankruptcy court and the BAP deemed that Inova's shift from unperfected to perfected status had improved its position 100% vis-à-vis unsecured creditors. Whereas the bankruptcy court and the BAP in essence assigned zero value to Inova's unperfected security interest when applying the 547(c)(5)(A) test, Inova argues that its interest should be given full face value. Inova contends that the lack of perfection of its security interest as of the 90th day before bankruptcy is irrelevant for purposes of the section 547(c)(5)(A) "improvement in position" test, because the test measures the value of "all security interests," including even unperfected security interests, as of the 90th day before bankruptcy. Were we to adopt Inova's position, Inova would be deemed to have not improved its position by the February 19, 2009 perfection, and would enter the safe harbor of section 547(c)(5).

The Trustee has consistently maintained that the "improvement in position" test measures the relative positions of perfected secured parties, and consequently an unperfected secured party as of 90 days before bankruptcy improves its position if the security interest is perfected as of the date of filing. He would deny Inova the safe harbor of section 547(c)(5), on the logic that the value of a perfected security interest necessarily exceeds that of an unperfected interest, so there has been an "improvement in position." The purpose for which section 547(c)(5) was enacted, the greater weight of judicial authority, and the informed commentators all agree with the Trustee, as do we.

Section 547(c)(5) was enacted to limit the rights of creditors holding floating liens over receivables or inventory. The legislative history of the measure reflects Congressional understanding of the benefit provided to creditors by perfected floating liens, and a felt need to limit those benefits in the 90 day period preceding bankruptcy. The legislative history specifically referenced two leading cases that were thought to have given perfected lien holders complete protection from preference challenge regardless of improvement in position in the 90 days preceding bankruptcy. H.R. Rep. 95-595, at 208 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6168 (discussing DuBay v. Williams, 417 F.2d 1277, 1289 (9th Cir. 1969); and Grain Merchants of Ind., Inc. v. Union Bank & Sav. Co., 408 F.2d 209, 218 (7th Cir. 1969)). Both cases dealt with creditors whose floating liens were perfected long before 90 days preceding bankruptcy. Id.; see also Vern Countryman, The Concept of a Voidable Preference in Bankruptcy, 38 Vand. L. Rev. 713, 797–98 (1985) (discussing DuBay, Grain Merchants, and the Congressional response). The purpose of the "improvement in position" test was to limit the rights of perfected floating lienholders vis-à-vis unsecured creditors, not to enhance the rights of unperfected security interest holders vis-à-vis unsecured creditors.

This history contrasts sharply with the present appeal. Inova seeks to gain the benefit, under the "improvement in position" test, of an unrecorded (and thus unperfected) lien of which other would-be creditors were unaware. Its argument presupposes that Congress meant the term "all security interests" in the 547(c)(5)(A) test to include unperfected security interests. We reject that supposition. Recognizing the reason why Congress enacted the "improvement in position" test, and the great prejudice to other creditors inherent in Inova's position, we hold that the statutory "improvement in position" tests presuppose a creditor holding a perfected security interest as of the date of the first testing point. A creditor who, like Inova, enters the test period unperfected is properly deemed, for purposes of section 547(c)(5), to have an interest of zero value.

The greater weight of judicial authority implicitly or explicitly adopts this position and confines the "improvement in position" test of section 547(c)(5)(A) to floating liens perfected outside the 90 days before filing of a bankruptcy petition. As early as 1980, it was held that the access to the "improvement in position" test for a creditor depended on its having a perfected security interest prior to the preference period. See Meyers v. Vt. Nat'l Bank (In re The Music House, Inc.), 11 B.R. 139, 140 (Bankr. D. Vt. 1980). In a case quite similar to this one, Markie v. Phillips (In re Phillips), 24 B.R. 712 (Bankr. E.D. Cal. 1982), an individual creditor perfected his inventory lien four days before the debtor's bankruptcy petition was filed. The bankruptcy court rejected the creditor's claim to "the safe harbor" of section 547(c)(5), which it held "is directed to floating liens that have been perfected outside the ninety day to one year avoiding period of 547(b) so as to limit the amount of security that they can encumber and not the instant situation of a transfer that occurs when a security interest is perfected within the voidable preference period." 24 B.R. at 715. Indeed, the court noted that "[t]his case is the classic situation that Section 547 seeks to remedy; the recording of secret loans and security agreements on the eve of bankruptcy to the detriment of unsecured creditors who made advances based on the apparent unencumbered inventory of the debtor." Id. A district court in Tennessee, also in 1982, reached the same conclusion, barring the "exception dealing with inventory, receivables and proceeds . . . because of the lack of perfection" of the security interest. Ford Motor Credit Co. v. Ken Gardner Ford Sales, Inc. (In re Ken Gardner Ford Sales, Inc.), 23 B.R. 743, 747 (E.D. Tenn. 1982). Likewise, the district court in the Southern District of New York opined, in reliance on Markie v. Phillips, that "§ 547(c)(5) presupposes that the lien on receivables be perfected prior to the preference period." U.S. Lines (S.A.), Inc. v. United States (In re McLean Indus., Inc.), 162 B.R. 410, 424 (S.D.N.Y. 1993), rev'd on other grounds, 30 F.3d 385 (2d Cir. 1994).

Notwithstanding the significant authority that presupposes, for purposes of the section 547(c)(5) improvement in position tests, the existence of a perfected security interest at the date of the first calculation under the tests, Inova relies on two

bankruptcy court decisions which gave creditors relief under section 547(c) even though their security interests were perfected within the 90 day preference period. The first case on which Inova relies is In re American Ambulance Service, Inc., 46 B.R. 658 (Bankr. S.D. Cal. 1985). In that case, the creditor advanced $35,000 to the debtor on October 1, 1982, and took a floating lien over the debtor's receivables and inventory. The creditor, however, failed to file the financing statement on time, and later did so within the 90 day time before the debtor filed for bankruptcy. The trustee sought to avoid the preference created by perfection of the security interest, under section 547(b). The bankruptcy court held that the creditor was entitled to seek relief under section 547(c)(5)(B), because first new value had been given within the 90 day preference period. The trustee however failed to offer any proof that the creditor had improved its position between October 1 and December 9, 1982, when the bankruptcy petition was filed. Consequently, the trustee's challenge was rejected.

To the extent that American Ambulance permits a creditor to avail itself of section 547(c)(5) relief even when its security interest is unperfected at the date of the first calculation under the improvement in position tests, we reject it as authority. We think the greater weight of authority is correct. It is beyond cavil that the perfection of a security interest within the 90 day preference period itself constitutes a preference. Before perfection, other would-be creditors are unaware of the interest held by the unperfected creditor. To give the value of a secret lien credit in computation of the improvement in position tests turns the safe harbor of section 547(c)(5) on its head. The safe harbor exists to protect floating liens, to be sure, but only to the extent that the lienholder's position is not improved in the pre-bankruptcy testing periods. Because American Ambulance would credit the value of a secret lien against an unsuspecting world, we decline to follow its lead.[6]

---

[6]We also note that American Ambulance is technically inapplicable to analyzing Inova's claim for relief under section 547(c)(5)(A), because in that case the first new value was given within the 90 day preference period, meaning that the improvement in position test must be measured comparing the position of the creditor on the date

Inova's reliance on Brown v. General Electric Capital Corp. (In re Foxmeyer Corp.), 286 B.R. 546 (Bankr. D. Del. 2002), is misplaced. In that case, the debtor entered into a credit facility agreement on June 19, 1996, and secured the debt with a floating lien on inventory and other property. The security interest was perfected by proper filing on the same day. The debtor entered bankruptcy on August 27, 1996. The trustee sought to void the perfected security interest as a preference. The creditor sought access to the safe harbor in section 547(c)(5), in the light of its first new value given within the preference period and its properly perfected lien. The trustee argued that only security interests perfected outside the 90-day period could find safe harbor relief. The bankruptcy court correctly rejected the trustee's view, based on the structure of 547(c)(5)(B), which contemplates that a creditor may advance first new value against a perfected security interest on the eve of bankruptcy. 286 B.R. at 568–69; see also, e.g., Countryman, supra, at 797; 5 Collier, supra, ¶ 547.04[5] n.123.

In Foxmeyer, because the trustee conceded that the creditor did not improve its position between the date of the perfection of the security interest and the bankruptcy filing, the bankruptcy court gave relief to the creditor under section 547(c)(5)(B). As such, the decision is correct, but it affords no relief to Inova on its section 547(c)(5)(B) argument, as explained below in section B-2. For purposes of Inova's section 547(c)(5)(A) argument, Foxmeyer is only noteworthy in that it stated agreement in dictum with the view of the bankruptcy judge in American Ambulance that application of the improvement in position test under section 547(c)(5)(A) does not presuppose the existence of a perfected security interest on the 90th day before bankruptcy.

---

the first new value was given to its position as of the bankruptcy filing. In that case, the trustee had made no showing that the creditor had improved its position, and for that reason the bankruptcy court rejected the trustee's attempt to void the untimely perfection of the security interest. In this case, to the contrary, the Trustee has carried his burden to show that Inova improved its position during the test period.

The leading treatise on bankruptcy explains that the "improvement in position" test set forth in section 547(c)(5)(A) is "aimed at the creditor holding a secured interest or 'floating lien' on the debtor's inventory or receivables that was perfected prior to the preference period. If the secured party's position does not improve relative to what it was 90 days preceding bankruptcy, [ ] there will be no preference." 5 Collier, supra, ¶ 547.04[5]. A leading academic in the field came to the same conclusion: "A creditor whose after acquired property clause picks up inventory or receivables obtained within the ninety day period cannot invoke [section 547(c)(5)] if his interest in the after-acquired property is not perfected because he failed to perfect the basic security interest." Countryman, supra, at 798. Countryman noted favorably both In re Phillips and In re Ken Gardner Ford Sales, Inc., and recognized American Ambulance to the contrary. Id. at 798 n.438. The White & Summers treatise argues that American Ambulance "incorrectly interprets 547(c)(5)." 4 James J. White & Robert S. Summers, Uniform Commercial Code § 32-7 n.11 (6th ed. 2009). The treatise explains that when the new value was given in American Ambulance, the creditor's security interest was not perfected, and the act of perfection within the 90 day period necessarily improved the creditor's position. To the extent the creditor's position is improved by perfection within the 90 day period, the treatise concludes that section 547(c)(5) "should not help the creditor at all." Id.

We therefore hold that the bankruptcy court and the BAP properly applied section 547(c)(5)(A) to conclude that the preferential transfer in this case, though it concerned an interest in accounts receivable, improved Inova's position as against Qualia's other creditors and so was not exempt from avoidance under that subsection.

B

As to Inova's remaining arguments, which it briefed but largely abandoned during oral argument, we find them unpersuasive.

-14-

1

First, we find the question of whether the IPA was a "true sale" or a financing agreement immaterial to this case. As the Trustee pointed out—and as Inova acknowledged at oral argument—in this case the characterization of the IPA as a "sale" or a financing agreement makes no practical difference. Even were the transaction a "sale," under California law (which the IPA specifically invokes) it could nevertheless be treated as a transfer by the debtor "for or on account of an antecedent debt" if Inova failed to timely file a financing statement, which in this case it did. See Cal. Com. Code § 9318(a), (b); see also 11 U.S.C. § 547(b)(2). We therefore hold this question irrelevant to our overall analysis.

Even if the issue mattered, we see no error in the conclusions of the bankruptcy court and the BAP that the transaction was a financing agreement and not a sale. The record indicates that Qualia remained liable to Inova for the full face value of any invoices transferred in the event Inova was unable to collect. We thus agree with the BAP's conclusion that "[t]his agreement, which shifts all risk to Qualia, is a disguised loan rather than a true sale." BAP Op., 441 B.R. at 330.

2

Second, we reject Inova's attempts in its briefing to find benefit under subsection (c)(5)(B) of section 547.

Subsection (c)(5)(B) applies in cases where a creditor's first transfer of "new value" to the debtor occurs within the preference period. It "mandates that, if an inventory/receivables lien is obtained during the preference period, then improvement in a creditor's secured position is measured from the date of such acquisition to the point of a bankruptcy petition filing." Foxmeyer, 286 B.R. at 568.

Inova argues that it gave "new value" within the meaning of subsection (c)(5)(B) on February 5, 2009, just two weeks before it filed its financing statement. Inova points to evidence that on that date, Qualia used Inova's online system to "sell" its final invoice to Inova. Inova contends that its payment to Qualia that same day of 85% of that invoice's face value was "new value" within the meaning of subsection (c)(5)(B). Inova thus contends that the transfer of a security interest in Qualia's accounts receivable to Inova should be deemed to have occurred on February 5, 2009, and not at any point prior to the start of the preference period.

The problem with Inova's argument is that subsection (c)(5)(B) turns not on the date of any "new value" but the date on which "new value was <u>first</u> given under the security agreement." 11 U.S.C. § 547(c)(5)(B) (emphasis added); <u>see also</u> <u>Foxmeyer</u>, 286 B.R. at 568. The record before us demonstrates that the February 5, 2009, invoice was not the first such invoice transferred to Inova under the IPA. Indeed, the record shows at least five previous transfers, including some occurring before the start of the preference period, and Inova claims to have advanced $1,084,012.80 to Qualia as of 90 days before bankruptcy. We therefore do not agree with Inova that the February 5 invoice, or indeed any of the invoices conveyed during the preference period, constitute "new value . . . first given under the security agreement." For that reason, relief for Inova under subsection (c)(5)(B) is unavailable.

For the above-stated reasons, the opinions of the BAP and the bankruptcy court are without legal error or clear factual error. We therefore affirm.

———————————————————