# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 12-6009

_____

*
In re: Robert Allen Johnson; Leita    *
Anne Johnson    *
   *
     Debtors    *
   *
----------------------    *
   *
Robert Allen Johnson; Leita Anne    *    Appeal from the United States
Johnson    *    Bankruptcy Court for the Western
   *    District of Missouri
     Debtors – Appellants    *
   *
       v.    *
   *
Richard Fink    *
   *
     Trustee – Appellee    *
   *

_____

Submitted: April 12, 2012
Filed: May 2, 2012

_____

KRESSEL, Chief Judge; SCHERMER and NAIL, Bankruptcy Judges

_____

KRESSEL, Chief Judge

The debtors, Robert and Leita Johnson, appeal from a bankruptcy court[1] order dismissing their chapter 13 case without prejudice. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

The debtors filed a chapter 13 petition on October 5, 2010 and confirmed their plan on January 26, 2011. The debtors used the Western District of Missouri's model plan, local form MOW 3083-1.1. The model plan provides six different treatments for unsecured creditors, of which the debtors may only choose one. The six types of treatment are 100% dividend, 0% dividend, base plan, liquidation analysis pot (LAP), 60-month disposable income pot (DIP-60), and 36-month disposable income pot (DIP-36). The local rules state that "[e]ach Chapter 13 plan must be filed with a plan summary or a combination plan/plan summary with all the information in the Local Form." W.D. Mo. Local Rule 3083-1. The debtors' confirmed plan was a 0% dividend plan.

In February 2011, the trustee, Richard Fink, learned that $3,789 of the debtors' 2010 tax refund was not exempt and accordingly property of the estate. The trustee filed a motion on March 14, 2011 to modify the plan to a liquidation analysis pot plan with a pot of $3,789. The debtors filed a modified plan on March 19, 2011 providing the same treatment to unsecured creditors as the trustee's proposed modified plan. The modified plan was confirmed on April 12, 2011.

In May 2011, the trustee learned that the debtors won $20,000 in a lottery. On June 10, 2011, the debtors filed a motion entitled *Regarding Spending Lottery Winnings* in which they revealed their after-tax windfall was $14,200 and that they had already spent $1,500 on "necessary" expenses and auto repairs. The debtors placed the remaining $12,700 in their attorney's trust account. The debtors amended this motion four days later indicating they spent an additional $200,

---

[1] The Honorable Dennis R. Dow, United States Bankruptcy Judge for the Western District of Missouri.

bringing that total to $1,700, and decided to purchase a vehicle for $5,800. The debtors claimed these additional expenditures were also "necessary" and that only $5,200 remained in their attorney's trust account. By doing simple math the trustee surmised that $1,500 was unaccounted for. In response, the trustee shared his concern about faulty accounting and argued that the lottery windfall may constitute additional disposable income.

## 1. July 19th hearing

On June 23, 2011, the trustee received a lump sum payment of $4,500 from the debtors. The following month, the bankruptcy court held a hearing on the debtors' motion *Regarding Spending Lottery Winnings*. The debtors argued they were allowed to keep and spend the windfall pursuant to 11 U.S.C. §1306 which states that "Property of the estate includes … all property … that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted … [e]xcept as provided for in a confirmed plan … the debtor shall remain in possession of all property of the estate." The debtors also cited Judge Lundin's treatise and two Eighth circuit cases, *Forbes*[2] and *Security Bank of Marshall*[3], as authority to keep the $2,200 not spent or transferred to the trustee.

The bankruptcy court agreed that the $2,200 was property of the estate but did not agree that that gave the debtors the right to do with it as they pleased. The debtors cited §1327 for the premise that the property is not only retained as part of the estate, but also that it vests in the debtor after confirmation. Section 1327 states:

> Except as otherwise provided for in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor. … the property vesting in the debtor … is free

---

[2] *Forbes v. Forbes (In re Forbes)*, 215 B.R. 183 (B.A.P. 8th Cir. 1997).
[3] *Security Bank of Marshalltown, Iowa v. Neiman*, 1 F.3d 687 (8th Cir. 1993).

and clear of any claim or interest of any creditor provided for by the plan.

11 U.S.C. §1327.

The bankruptcy court replied with a quotation from §1306: "It says 'remained [sic] in possession.' Okay. They've got possession. That doesn't give them the authorization to do anything particular with it." According to the court, the debtors obviously conceded court authorization was required to expend the lottery winnings otherwise they would not have requested such authorization. The bankruptcy court deemed the $13,700 already spent as necessary and reasonable expenses under the condition that the remaining $2,200 was turned over to the trustee.

On July 21, 2011, the trustee made a motion to modify the debtors' plan to increase the LAP to $10,489 accounting for both the $6,700 unspent lottery winnings plus the $3,789 non-exempt 2010 tax refund. The trustee received the remaining $2,200 from the debtors on July 26, 2011. The debtors filed their own plan modification reducing their monthly payment from $240 to $100 and inserted additional language to paragraph 13: "Debtors will make a one-time, lump-sum payment of $6,700 from gambling winnings which the trustee may disburse to creditors as though it was a monthly plan payment. Debtors will continue monthly payments through the applicable commitment period." On August 11, 2011 the trustee filed a motion to deny confirmation of the debtors' modified plan arguing the plan violated both 11 U.S.C. §1322(a)(1)[4] and §1325(a)(3)[5]. The debtors filed a response on August 13, 2011 and a hearing was held on September 22, 2011.

---

[4] §1322(a)(1) requires the debtor to provide all "future earnings" and "future income" to the supervision and control of the trustee for execution of the plan.
[5] §1325(a)(3) requires the plan has been proposed in good faith and not by any means forbidden by law.

4

## 2. September 22nd hearing

At the hearing, the trustee argued that the $6,700 should be added to the LAP in the debtors' plan to be paid to the unsecured creditors. The bankruptcy court agreed that was appropriate. The debtors argued that unsecured creditors should not get priority over secured creditors under the plan and the lump sum payment should be disbursed by the trustee in equal monthly amounts (EMA) to the secured creditors as called for under the confirmed plan. The bankruptcy court disagreed stating that under the Code, the additional funds are disposable income which *must* be paid to the unsecured creditors. The bankruptcy court sustained the trustee's motion to deny confirmation because the debtors' lower monthly payment didn't fund the EMA's and because the windfall was not committed to the unsecured creditors, "which is what it needs to do." The debtors were given 20 days to file a new modified plan with the direction that the lottery money needed to be added to the plan for "the sole benefit of non-priority unsecured creditors."

On September 29, 2011, the debtors filed an amended reply and suggestion to reconsider the previous modified plan and a motion to reconsider the bankruptcy court's decision to deny confirmation of the same proposed amended plan. The trustee filed a response on October 3, 2011 and a hearing was held on October 20th.

## 3. October 20th hearing

The trustee argued that as a result of receiving the $6,700 windfall the plan was running 15 months under the current confirmed plan, well short of the 36 month applicable commitment period (ACP) for the below-median chapter 13 debtors assuming the lottery winnings would be used to pay secured creditors. [6]

---

[6] We are not sure how the trustee arrived at this calculation. The debtors' pay was being garnished, and the plan payments were current. The windfall ($6,700) divided by the plan payment ($240) equals 27.9 monthly payments. By our calculations, the debtors were going to exceed the ACP by several months—but in

The trustee insisted that all $6,700 be placed in the LAP for distribution to the unsecured creditors. The proposed plan payments remained $240 which was not feasible according to amended schedules I and J indicating the debtors' monthly disposable income was $100.

The debtors argued that the previously confirmed plan was still binding on the debtors and the trustee and that the windfall should be applied to the EMA's. The bankruptcy court stated that with the changed circumstances, the debtors were abandoning[7] the confirmed plan and needed to file a new plan that addresses what to do with the pot of money turned over to the trustee. The debtors argued that paragraph J(i) of their confirmed plan states, "during the ACP, all disposable income shall be paid into the plan … all unsecured creditors shall be paid their pro rata share at the satisfaction of secured, priority, unsecured claims."[8] The debtors argued further that paragraph B of the plan states, "the trustee shall distribute funds as available in full EMA's or multiple EMA's until the final payment of secured creditors are [sic], in fact, satisfied."

The bankruptcy court said that there was no reason to consider what to do with the money under the prior confirmed plan. The issue presented by the debtors, continued the court, for consideration at the hearing is whether the proposed modified plan ought to have been confirmed. The debtors clarified that the proposed modified plan treated the windfall as a one-time payment to be used to pay secured creditors in addition to the new monthly $100 payments to satisfy the EMA's under the plan. The bankruptcy court held that the windfall belongs to the unsecured creditors under the Code: "the Code tells us that … projected disposable income is to be paid to the non-priority unsecured creditors … to the extent that your plan would propose to use that money in any other way, it is

---

any event they had certainly provided more than 15 months' worth of plan payments.

[7] The bankruptcy court did not point to any legal authority for the contention that a change in circumstances necessitates abandonment of a confirmed plan.

[8] These quotes are what the debtors stated at the hearing—they do not necessarily match up word for word with the plan language.

inconsistent with [the Code]." The bankruptcy court entered an order denying both the trustee's motion to modify the plan and the debtors' motion to reconsider and gave the debtors a November 10, 2011 deadline to file a modified plan. No modified plan was filed.

#### 4. November 17th hearing

A status hearing was conducted on November 17, 2011. The bankruptcy court explained that the hearing was called because the confirmed plan did not properly account for the windfall and required a monthly payment the debtors could no longer make. Presumably, the debtors would default sometime in the near future precipitating a motion to dismiss from the trustee. In the court's view, it did not make sense to await default and dismissal simply because the windfall was not properly treated.

The trustee was waiting for the debtors to file a modified plan, and the debtors' attorney said he already used a "cattle prod" on his clients in an effort to motivate them to file a modified plan. At this time, the debtors were still current on their monthly payments under the confirmed plan. The trustee opined this was only because of the "employer wage order."[9] The debtors indicated they were working on a modified plan and that there were some additional complications because they were now separated creating additional expenses. The bankruptcy court acknowledged that because the debtors' plan payments were current, regardless of what the new schedules I and J indicated, the $240 payment wasn't necessarily unfeasible. The court reiterated that the lottery proceeds still needed to be addressed and that only the debtors possessed the information necessary to properly put together a new plan.

The bankruptcy court entered an order stating, "Debtor [sic] has 21 days to file an Amended Plan or convert to a Chapter 7, or this case will be dismissed

---

[9] Soon after the plan was confirmed the trustee requested and the court granted an order requiring Leita Johnson's employer to pay the $240 monthly payment directly to the trustee.

without further notice." The debtors did not file a modified plan or convert their case. On December 8 2011, the trustee filed a motion for an order to disburse the $6,700 windfall on a pro rata basis to non-priority unsecured creditors with allowed claims.

### 5. December 15th hearing

At a hearing on December 15, 2011 the bankruptcy court stated that because no plan had been filed, the case was now either going to be dismissed or converted or the court would entertain the trustee's motion to disburse the lottery winnings. The trustee argued that the case should not be converted to chapter 7 because a conversion would result in the lottery winnings first going to secured creditors until paid in full with the remaining amount to unsecured creditors. The trustee really wanted to see all of the money go to the unsecured creditors and advocated paying the remaining attorney's fees, around $1,400, and then disbursing the balance to the non-priority, unsecured creditors on a *pro-rata* basis.

The debtors tried once more to convince the court that the confirmed plan did, in fact, address how to handle the windfall funds. The bankruptcy court exhorted, "We're way past that." The debtors replied that they didn't want to convert to chapter 7 and would prefer to remain in chapter 13. The court determined that was no longer an option and entered an order granting the trustee's motion to disburse the funds.

On December 26, 2011, the debtors filed a notice of appeal appealing several of the bankruptcy court's orders: granting the trustee's motion to disburse funds, directing the debtors to file an amended plan or face conversion or dismissal, granting the trustee's motion to deny confirmation of the modified plan, and granting the debtors motion R*egarding Spending Lottery Winnings* requiring turnover of $2,200.

The trustee mailed the disbursement checks to the unsecured creditors on January 6, 2012 and filed a status report to inform the court that the terms of the December 15, 2011 order were fulfilled. The trustee filed a motion to dismiss the

8

appeal on January 18, 2012. The debtors requested that we stay the bankruptcy court's order to disburse funds and extend the automatic stay pending their appeal. The trustee objected on January 20th. That same day, we denied the debtors' motion for stay pending appeal and granted the trustee's motion to dismiss the appeal because the disbursement of funds by the trustee "renders the matter moot."

On January 23, 2012, the bankruptcy court dismissed the debtors' chapter 13 case. The debtors filed their timely appeal on January 31, 2012. They also nominally appealed the January 25, 2011 order confirming their initial plan, the order requiring turnover of the remaining $2,200 from the windfall, the order granting the trustee's motion to deny confirmation of the debtors' amended plan, the order directing debtors to file either an amended plan or a motion to convert to chapter 7 within 21 days, the order granting the trustee's motion to disburse funds, and the order dismissing their case on January 25, 2012.

## JURISDICTION

We have jurisdiction over this appeal from the final order of the bankruptcy court. *See* 28 U.S.C. §158(b).

## STANDARD OF REVIEW

We review the factual findings of the bankruptcy court for clear error and its legal conclusions de novo. See *Lange v. Inova Capital Funding, LLC (In re Qualia Clinical Service, Inc.)*, 652 F.3d 933, 936 (8th Cir. 2011). We review the dismissal of a case for failure to comply with a court order for an abuse of discretion. *Reid v. Checkett (In re Reid)*, 197 F.3d 318, 320 (8th Cir. 1999).

## ANALYSIS

While the debtors' notice of appeal lists six separate orders, they only address one of the listed orders in their argument: the January 2011 order confirming their original chapter 13 plan. The debtors argue that the January 2011 confirmation order was improper. They first argue that the confirmation order did not properly project disposable income because it required the debtors to report all

9

windfalls during the ACP. The debtors state that this is inconsistent with the holdings in *Fredrickson*,[10] *Hamilton v. Lanning*[11] and *Ransom*.[12] The debtors proclaim that this "wait and see" approach did not properly provide the binding effect of a confirmed plan. Finally, the debtors argue that the amounts to be paid to unsecured creditors must be determined at confirmation as Congress intended.

The trustee argues that anything listed in the notice of appeal in addition to the order dismissing the case is beyond the scope of the debtors' appeal. He asserts that any final orders listed in the notice of appeal, other than the order dismissing the case, were not properly appealed 14 days after becoming final. The trustee concedes, however, that the Eighth Circuit allows review of "the events and rulings leading to a final order, *Zahn v. Fink*, 526 F.3d 1140, 1143 (8th Cir. 2008), but disputes that the orders listed by the debtors are such events.

Additionally, the trustee argues that the bankruptcy court has broad discretion to enter orders dismissing cases, and short of clear error, there is no authority for a reviewing court to disturb the bankruptcy court's ruling. See Fed. R. Bankr. P. 8013. The trustee cites two cases for the proposition that the debtors' case was properly dismissed. One is *Flaksa v. Little River Marine Constr. Co.*, 389 F.2d 885, 887 (5th Cir. 1968), stating "It is well established that … a court has the authority to dismiss … for failure to prosecute with reasonable diligence or to comply with … orders or rules of procedure." The other is *In re Kleeman*, 54 B.R. 62 (Bankr. W.D. Mo. 1985).

Our analysis begins and ends by addressing the trustee's concern over which of the orders and motions are properly presented and argued on appeal. The entirety of the debtors' argument is that the order confirming the original plan was improper. In *Zahn*, the Eighth Circuit plainly stated that, "confirmation of a plan generally acts as a final order." *Zahn*, 526 F.3d at 1143. To properly appeal the January 26, 2011 order confirming the debtors plan, the debtors were required to

---

[10] *Coop v. Frederickson (In re Frederickson)*, 545 F.3d 652 (8th Cir. 2008).
[11] *Hamilton v. Lanning*, 130 S. Ct. 2464 (2010).
[12] *Ransom v. FIA Card Services, N.A.*, 131 S. Ct. 716 (2011).

file a timely notice of appeal within 14 days of confirmation. Fed. R. Bankr. P. 8002. No such notice was filed. The confirmation order and the plan thus became binding on all parties, including the debtors. Any errors the debtors claim were made in that order are beyond our jurisdiction to review. While the final order dismissing the case was timely appealed and is properly before us, the debtors simply do not provide any basis, or even a remote suggestion, that the bankruptcy court abused its discretion by ordering their case dismissed.

## CONCLUSION

For the reasons stated above, the decision of the bankruptcy court is affirmed.

_____